# EXHIBIT D

# PRIVATE COMPANY LIABILITY POLICY

**THIS POLICY'S LIABILITY COVERAGE PARTS, IF PURCHASED, ARE ON A CLAIMS MADE AND REPORTED BASIS AND COVER ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF EXERCISED, THE EXTENDED REPORTING PERIOD. CLAIM EXPENSES ARE INCLUDED WITHIN THE RETENTION AND SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

## EVEREST NATIONAL INSURANCE COMPANY

(hereinafter "Insurer")
477 Martinsville Road
P.O. Box 830
Liberty Corner, NJ 07938-0830

### DECLARATIONS

**POLICY NUMBER: PC8ML00004-191**          **REPLACEMENT OF: SC8DO00002-181**

**PRODUCER NAME:    Lockton Companies LLC**

**ADDRESS:      Three Embarcadero Center, 6th Floor
San Francisco, CA 94111**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**ITEM 1.    PARENT COMPANY: Foster Poultry Farms**

**ADDRESS:        1000 Davis St
Livingston, CA 95334**

**ITEM 2.    COMBINED AGGREGATE LIMIT OF LIABILITY: $30,000,000** All **Loss** under all Coverage Parts, combined, other than the Crime Coverage Part

**ITEM 3.    POLICY PERIOD:  From 12:01 A.M. on May 7, 2019 To 12:01 A.M. on May 7, 2020**
Local time at the address shown in Item 1.

**ITEM 4.    EXTENDED REPORTING PERIOD:**

A. Additional Premium:            100% of Annualized Premium in Item 8

B. Additional Period:            One Year

**ITEM 5.    NOTICE TO INSURER:**
A. Address for Notice of **Claim** or Potential **Claim**
Attn: Casualty Claims Department
Everest National Insurance Company
P.O. Box 830
477 Martinsville Road
Liberty Corner, NJ  07938

B. Address for All Other Notices:
Attn: Everest National Insurance Company
P.O. Box 830
477 Martinsville Road
Liberty Corner, NJ  07938

**ITEM 6.   COVERAGE SCHEDULE:**

This policy includes only those Coverage Parts designated below by "X" as purchased.  If a Coverage Part is not expressly designated as purchased, this policy does not include such Coverage Part.

| Coverage Part | | Purchased | Coverage Part Limit of Liability | Retention[1] | Pending or Prior Date | Duty to Defend |
|---|---|---|---|---|---|---|
| A. | Management and Company Liability | | | | 01/01/2005 | |
| | 1.  Insuring Clause A: Insured Person Liability | Yes X | | | | Yes ___ |
| | 2.  Insuring Clause B: Company Reimbursement | No ____ | $10,000,000 Aggregate Limit of Liability | $250,000 Each **Claim** | | No X |
| | 3.  Insuring Clause C: Company Liability | | | | | |
| | 4.  Insuring Clause D: Derivative Demand Investigation Costs | | $250,000 Sublimit | None | | |
| B. | Employment Practices and Third Party Discrimination Liability | Yes X  No ____ | $10,000,000 Aggregate Limit of Liability | $1,500,000 Each **Employment Practices Claim**  $1,500,000 Each **Third Party Discrimination Claim** | 01/01/1998 | Yes ___  No X |
| C. | Fiduciary Liability | Yes X  No ____ | $10,000,000 Aggregate Limit of Liability | $25,000 Each **Claim** | 09/19/1987 | Yes X  No ___ |
| D. | Crime | Yes ___  No X | See Crime Coverage Part Supplemental Declarations | None | | |

---

[1] No Retention shall apply to **Non-Indemnifiable Loss** incurred by **Insured Persons** under any **Liability Coverage Part**, except as required by state law.

**Liability Coverage Parts** which share Limit of Liability:

      ☐  A.    Management and Company Liability

      ☐  B.    Employment Practices and Third Party Discrimination Liability

      ☐  C.    Fiduciary Liability

      ☒  D.    None

**ITEM 7.**  **ADDITIONAL SIDE A LIMIT OF LIABILITY UNDER THE MANAGEMENT AND COMPANY LIABILITY COVERAGE PART:**

A. Purchased:               Yes X   No \_\_\_\_

B. Additional Limit of Liability:   $1,000,000

**ITEM 8.**  **POLICY PREMIUM:**   $267,815

**ITEM 9.  FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY ON THE DATE THIS POLICY IS ISSUED:**

| Endorsement | Form Number |
|---|---|
| California Amendatory-Cancellation and Nonrenewal (General Terms and Conditions) | ESU 20 103 02 11 |
| California Amendatory (General Terms and Conditions) | ESU 20 281 04 11 |
| State Amendatory Inconsistency Endorsement | ESU (PCL) CWM025B-1 0517 |
| Consent to Settle Within Retention Endorsement | ESU (PCL) CWM014A-1 0117 |
| Declarations Amended Endorsement (Extended Reporting Period) | ESU (PCL) CWM040A-1 0317 |
| Employed Lawyers Coverage Endorsement | ESU (PCL) CWM042A-1 0317 |
| Breach of Contract Exclusion | ESU (PCL) CWM130B-1 0717 |
| Workplace Violence Coverage Enhancement Endorsement | ESU (PCL) CWM044A-1 0317 |
| Fiduciary Loss Amended Endorsement | ESU (PCL) CWM117A-1 0517 |
| Voluntary Settlements Program Endorsement | ESU (PCL) CWM121A-1 0517 |
| Pre-Determined RunOff Endorsement | ESU (PCL) CWM137A-1 1117 |
| Professional Services Exclusion (With Shareholder Carveback) | ESU (PCL) CWM131B-1 0717 |
| Privacy Network Security Exclusion | ESU (PCL) CWM030D-1 0218 |
| Employment Practices Liability Wage & Hour Exclusion | ESU (PCL) CWM1196A-1 0517 |
| Specific Matter Exclusion | ESU (PCL) CWM028A-1 0217 |
| GT&C Amendatory | ESU (PCL) CWM118I-2 0219 |
| D&O Amendatory | ESU (PCL) CWM167A-1 0618 |
| EPL Amendatory | ESU (PCL) CWM168A-1 0618 |
| Fiduciary Amendatory | ESU (PCL) CWM169A-1 0618 |
| Product Exclusion | ESU (PCL) CWM132D-1 0618 |
| Anti-Trust Coverage Endorsement | ESU (PCL) CWM122C-1 0618 |
| Mass Class D&O Retention | ESU (PCL) CWM166A-1 0618 |
| Bordereau Reporting Endorsement (Semi-Annual) | ESU (PCL) CWM165A-1 0618 |
| Side-A Matching Endorsement | ESU (PCL) CWM170A-1 0618 |

**THESE DECLARATIONS, TOGETHER WITH THE PRIVATE COMPANY LIABILITY POLICY'S ATTACHED GENERAL TERMS AND CONDITIONS, PURCHASED COVERAGE PARTS AND ANY ENDORSEMENT(S) AND THE APPLICATION, CONSTITUTE THE ABOVE NUMBERED POLICY.**

June 4, 2019
DATE

# PRIVATE COMPANY LIABILITY POLICY
## GENERAL TERMS AND CONDITIONS

<u>TABLE OF CONTENTS</u>

SECTION I – TERMS AND CONDITIONS ........................................................................................1

SECTION II – DEFINITIONS ........................................................................................................1

SECTION III – LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS ....................................3

SECTION IV –LIABILITY COVERAGE PART EXTENSIONS ...........................................................5

SECTION V – ALLOCATION ........................................................................................................5

SECTION VI – CHANGES IN EXPOSURE ....................................................................................5

SECTION VII – DEFENSE AND SETTLEMENT .............................................................................6

SECTION VIII – REPORTING AND NOTICE ..................................................................................7

SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES ....8

SECTION X – TERRITORY AND VALUATION ...............................................................................8

SECTION XI – OTHER INSURANCE ............................................................................................8

SECTION XII – SUBROGATION ..................................................................................................8

SECTION XIII – ALTERATION, ASSIGNMENT AND HEADINGS ....................................................9

SECTION XIV – PAYMENT PRIORITY .........................................................................................9

SECTION XV – CANCELLATION AND NONRENEWAL ..................................................................9

SECTION XVI – AUTHORIZATION CLAUSE .................................................................................9

SECTION XVII – BANKRUPTCY ..................................................................................................9

# PRIVATE COMPANY LIABILITY POLICY
## GENERAL TERMS AND CONDITIONS

## SECTION I – TERMS AND CONDITIONS

This policy is comprised of these General Terms and Conditions, the Declarations, various Coverage Parts and endorsements, if applicable, and the **Application**. Although various Coverage Parts may be referenced in this policy, a Coverage Part is included within this policy and affords coverage only if that Coverage Part is designated as being purchased in the Coverage Schedule in Item 6 of the Declarations.

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the General Terms and Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

## SECTION II – DEFINITIONS

When used in this policy, the following terms, whether in the singular or plural, are defined as follows:

A. **Application** means all materials and information, including all signed applications and any materials attached thereto or incorporated therein, submitted by or on behalf of the **Insureds** to the Insurer in connection with the underwriting of this policy or any policy issued by the Insurer of which this policy is a direct or indirect renewal or replacement.

   The **Application** is deemed attached to and incorporated into this policy.

B. **Claim** means, with respect to any **Liability Coverage Part**, those matters defined as a **Claim** in such Coverage Part.

C. **Company** means, collectively, the **Parent Company** and its **Subsidiaries**, including any such organization as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

D. **Coverage Event** means, with respect to a **Non-Liability Coverage Part**, the event or loss which must occur or be sustained or discovered in order to invoke coverage under such Coverage Part.

E. **Claim Expenses** means that part of a **Loss** consisting of reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses (other than wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by the **Insureds** (i) in the defense or appeal of a **Claim**, including the premium for appeal, attachment or similar bonds (without any obligation by the Insurer to apply for or furnish such bonds), or (ii) at the Insurer's request to assist the Insurer in investigating a **Claim**.

F. **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

G. **Employee** means the following:

   1. any natural persons in the regular service of the **Company** in the ordinary course of the **Company's** business and whom the **Company** compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, including any such natural persons who are leased, temporary, part-time or seasonal employees of the **Company**;

   2. any natural person independent contractors who are treated under applicable law as employees of the **Company**; and

   3. any volunteers of the **Company**;

provided any coverage for any such leased employees or independent contractors shall be specifically excess of any indemnification or insurance otherwise available to such leased employees or independent contractors from the applicable leasing company or any other source.

H.  **ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

I.  **Executive Officer** means with respect to any **Company** the natural persons who were, now are or shall become such **Company's** president, chief executive officer, chief operating officer, chief financial officer or in-house general counsel or, with respect to a **Company** incorporated outside the United States, the functional equivalent of any of the foregoing positions.

J.  **Extended Reporting Period** means the period of the extended coverage under the **Liability Coverage Parts**, as set forth in Item 4.B of the Declarations.

K.  **Extradition** means any formal process by which an **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

L.  **Financial Impairment** means the status of the **Company** resulting from:

1.  the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**, or

2.  the **Company** becoming a debtor in possession.

M.  **Insured Persons** means with respect to each Coverage Part the natural persons defined as **Insured Persons** in such Coverage Part.

N.  **Insureds** means with respect to each Coverage Part the entities, plans and natural persons defined as **Insureds** in such Coverage Part.

O.  **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

P.  **Liability Coverage Part** means any of the following: the Management and Company Liability Coverage Part, the Employment Practices and Third Party Discrimination Liability Coverage Part and the Fiduciary Liability Coverage Part, if purchased as set forth in the Coverage Schedule in Item 6 of the Declarations.

Q.  **Loss** means:

1.  with respect to any **Liability Coverage Part**, the amounts defined as **Loss** in such Coverage Part; and

2.  with respect to any **Non-Liability Coverage Part**, the amounts covered under such Coverage Part.

R.  **Manager** means any natural person who is a former, present or future manager, managing member, general partner, and member of the board of managers or equivalent executive of a **Company** that is a limited liability company or limited partnership.

S.  **Non-Indemnifiable Loss** means **Loss** incurred by an **Insured Person** for which the **Company** is not permitted by common or statutory law to indemnify or is not financially able to indemnify by reason of **Financial Impairment**.

T.  **Non-Liability Coverage Part** means the Crime Coverage Part if purchased as set forth in the Coverage Schedule in Item 6 of the Declarations.

U.  **Parent Company** means the organization designated in Item 1 of the Declarations.

V.  **Plans** means the plans and programs defined as **Plans** in the Fiduciary Liability Coverage Part, if purchased.

W.  **Policy Period** means the period set forth in Item 3 of the Declarations, subject to prior termination in accordance with Section XV of these General Terms and Conditions.

X.  **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. **Pollutants** also means any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or

asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

Y.  **Subsidiary** means:

   1.  any organization in which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position is owned, in any combination, by one or more **Company(ies)**;

   2.  any organization in which one or more **Companies**, in any combination, have the right, pursuant to a written contract with or the by-laws, charter, operating agreement or similar document of such organization, to elect or appoint a majority of the directors or equivalent position of such organization; and

   3.  any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more **Companies**.

.  Z.  **Wrongful Acts** means, with respect to any **Liability Coverage Part**, the acts, errors, omissions and other matters defined as **Wrongful Acts** in such Coverage Part.

## SECTION III – LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS

A.  LIMITS OF LIABILITY FOR LIABILITY COVERAGE PARTS

   1.  Combined Aggregate Limit of Liability

   The amount set forth in Item 2 of the Declarations shall be the Insurer's maximum aggregate liability for all **Loss** covered under all Coverage Parts, combined, other than the Crime Coverage Part.

   2.  Liability Coverage Part Limit of Liability

   The respective Limit of Liability for each **Liability Coverage Part**, as set forth in the Coverage Schedule in Item 6 of the Declarations, shall be the Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** under such **Liability Coverage Part**. The Limit of Liability for each **Liability Coverage Part** shall be part of and not in addition to the Combined Aggregate Limit of Liability as set forth in Item 2 of the Declarations.

   3.  Shared Liability Coverage Part Limit of Liability

   The Insurer's maximum aggregate liability for all **Loss** covered under all **Liability Coverage Parts** which share a Limit of Liability, as designated in Item 6 of the Declarations, combined, shall be the largest of such shared Limits of Liability. Such shared Limit of Liability shall be part of and not in addition to the Combined Aggregate Limit of Liability as set forth in Item 2 of the Declarations. This paragraph further limits the Insurer's maximum liability under each such **Liability Coverage Part** and does not increase the respective separate Limit of Liability for each **Liability Coverage Part**.

   4.  Additional Side A Limit of Liability

   If the Additional Side A Limit of Liability is purchased pursuant to Item 7.A of the Declarations and if the Limit of Liability applicable to **Loss** covered under the Management and Company Liability Coverage Part is exhausted by payments by the Insurer, then the Insurer's liability for any **Non-Indemnifiable Loss** which is covered under Insuring Clause A thereof and which is incurred thereafter on account of a **Claim** separate from the **Claim(s)** which exhausted such Limit of Liability shall be subject to an additional Limit of Liability in an amount set forth in Item 7.B of the Declarations.

   5.  Claim Expenses Within Limit of Liability

   **Claim Expenses** are part of and not in addition to the Limits of Liability applicable to the **Liability Coverage Parts**, and the payment by the Insurer of **Claim Expenses** reduces such Limits of Liability. If the applicable Limit of Liability is exhausted by payment of **Loss**, the Insurer's obligations, including without limitation any duty to defend, shall be completely fulfilled and extinguished. Subject to Section XIV of these General Terms and Conditions, the Insurer is

entitled to pay **Loss** as it becomes due and payable by the **Insureds**, without consideration of other future payment obligations.

B.     RETENTION FOR LIABILITY COVERAGE PARTS

The Insurer's liability under the **Liability Coverage Parts** with respect to **Loss** on account of each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention set forth in the Coverage Schedule in Item 6 of the Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.  No Retention shall apply to **Non-Indemnifiable Loss** incurred by an **Insured Person**.

C.     LIMITS OF LIABILITY AND DEDUCTIBLE FOR NON-LIABILITY COVERAGE PART

The Insurer's maximum liability and the applicable Retention under the **Non-Liability Coverage Parts** shall be the respective Limits of Liability and Retention amounts as set forth in the respective Coverage Part Declarations, if any.  Such Limits of Liability and Retention amounts will be applied as described in the respective **Non-Liability Coverage Part**.

D.     SINGLE CLAIMS

All **Claims** under the **Liability Coverage Parts** which arise out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of **Insureds** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy Period**.

E.     SINGLE CLAIM COVERED BY MULTIPLE LIABILITY COVERAGE PARTS

If a single **Claim** (as described in Subsection III.D above) is covered in whole or in part under more than one **Liability Coverage Part**:

1.     the applicable Retention under each such **Liability Coverage Part** shall be applied with respect to coverage for such **Claim** under such **Liability Coverage Part**, provided the sum of all applicable Retentions under all such **Liability Coverage Parts** shall not exceed the largest of such applicable Retentions; and

2.     the remaining applicable Limits of Liability under each such **Liability Coverage Part** shall apply with respect to coverage for such **Claim** under such **Liability Coverage Part**, provided the Insurer's maximum aggregate liability for all **Loss** covered under all such **Liability Coverage Parts**, combined, on account of such **Claim** shall not exceed the largest of such remaining applicable Limits of Liability.  This paragraph 2 does not increase the Insurer's maximum liability with respect to such **Claim**, which is also subject to the Combined Aggregate Limit of Liability as set forth in Item 2 of the Declarations and any shared Limit of Liability described in Subsection III.A.3 above.

# SECTION IV –LIABILITY COVERAGE PART EXTENSIONS

A.     ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Persons** shall be considered an **Insured Person** under the **Liability Coverage Parts** but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**.  No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**.  All provisions in these General Terms and Conditions and the respective **Liability Coverage Part** applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

B.     EXTENDED REPORTING PERIOD

If the Insurer or the **Parent Company** terminates or refuses to renew this policy other than for nonpayment of premium, the **Insureds** shall have the right, upon payment of the additional premium set forth in Item 4.A of the Declarations, to an extension of the coverage granted by the **Liability Coverage Parts** for the **Extended Reporting Period** set forth in Item 4.B of the Declarations following the effective date of termination or nonrenewal, but only with respect to any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal.  This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Insureds** to the Insurer within thirty (30) days following the effective date of termination or nonrenewal.

The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

The entire additional premium for the **Extended Reporting Period** shall be deemed fully earned at the inception of the **Extended Reporting Period**.

The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the **Policy Period**.

## SECTION V – ALLOCATION

Subject to this Section V, if in any **Claim** under the **Liability Coverage Parts** the **Insureds** incur both **Loss** covered by this policy and loss not covered by this policy either because the **Claim** against the **Insureds** includes both covered and uncovered matters or because the **Claim** is made against both **Insureds** who are afforded coverage for such **Claim** and others, including **Insureds**, who are not afforded coverage for such **Claim**, the **Insureds** and the Insurer shall use their best efforts to allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters.

In any arbitration, suit or other proceeding among the Insurer and the **Insureds** or the **Company**, no presumption shall exist concerning what is a fair and proper allocation between covered **Loss** and uncovered loss.

## SECTION VI – CHANGES IN EXPOSURE

A.    NEW ORGANIZATIONS

1.    If before or during the **Policy Period** the **Company** acquires or creates a new **Subsidiary** or acquires an entity by merger or consolidation, coverage under this policy automatically shall apply to the new organization and its **Insureds**, provided such coverage shall apply only with respect to **Claims** for **Wrongful Acts** (under a **Liability Coverage Part**) or a **Coverage Event** (under a **Non-Liability Coverage Part**) taking place after such acquisition or creation.

2.    However, if (i) such newly acquired organization has issued any publicly-owned debt or equity securities, (ii) the total assets of such newly acquired organization exceeds twenty-five percent (25%) of the total assets of the **Parent Company** as reflected in their respective most recent audited consolidated financial statements, (iii) solely with respect to the Employment Practices and Third Party Discrimination Liability Coverage Part and the Crime Coverage Part, if purchased, the total number of **Employees** of all **Companies** increases by more than twenty-five percent (25%) as an immediate result of such acquisition, merger or consolidation, or (iv) solely with respect to the Fiduciary Liability Coverage Part, if purchased, the total assets of all **Plans** of such newly acquired organization exceeds twenty-five percent (25%) of the total assets of all other **Plans** of all **Companies** as reflected in their respective most recent financial statements, then coverage under such Coverage Part as provided in subsection 1 above shall apply only if the Insurer agrees to afford such coverage pursuant to subsection 3 below.

3.    The Insurer may agree to extend the coverage described in subsection 1 above to the new organization described in subsection 2 above and its **Insureds** if, within ninety (90) days after the acquisition, the **Parent Company** provides any additional information, pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such extension of coverage. In such event, the Insurer shall issue an endorsement to this policy confirming such coverage extension.

B.    ACQUISITION OF PARENT COMPANY

If during the **Policy Period** the **Parent Company** merges into or consolidates with another organization such that the **Parent Company** is not the surviving entity, or another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees or equivalent executives of the **Parent Company**, then coverage under this policy shall continue until the termination of this policy, provided such coverage shall apply only with respect to **Claims** for **Wrongful Acts** (under a **Liability Coverage Part**) or a **Coverage Event** (under a **Non-Liability Coverage Part**) taking place prior to such merger, consolidation or acquisition.

C.    CESSATION OF SUBSIDIARIES

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Insureds** shall continue until termination of this policy, provided such coverage shall apply (i) with respect to any **Liability Coverage Parts**, only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**, and (ii) with respect to any **Non-Liability Coverage Part**, only with respect to **Coverage Events** taking place prior to the date such organization ceased to be a **Subsidiary**.

D.    CESSATION OF PLANS

If before or during the **Policy Period** a **Plan** is terminated, coverage for such **Plan** and its **Insureds** under the Fiduciary Liability Coverage Part, if purchased, shall continue until termination of such Coverage Part with respect to **Wrongful Acts** taking place before or after such termination.

## SECTION VII – DEFENSE AND SETTLEMENT

A.    LIABILITY COVERAGE PART DEFENSE AND SETTLEMENT

1.    If duty to defend coverage is purchased with respect to any **Liability Coverage Part** as designated in the Coverage Schedule in Item 6 of the Declarations, the Insurer shall have the right and duty to defend any **Claim** covered under such **Liability Coverage Part**, even if any of the allegations are groundless, false or fraudulent.  The Insurer's duty to defend any **Claim** shall cease upon exhaustion of the Limit of Liability applicable to such **Claim**.

2.    If duty to defend coverage is not purchased with respect to any **Liability Coverage Part** as designated in the Coverage Schedule in Item 6 of the Declarations, it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim** covered under such **Liability Coverage Part**.  Solely with respect to such **Liability Coverage Part**, the Insurer shall advance covered **Claim Expenses**  within ninety (90) days after the receipt by the Insurer of properly detailed Claim Expenses invoices.  Any advancement of covered **Claim Expenses** shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the extent it is later determined the **Insureds** shall not be entitled under the terms and conditions of this policy to coverage for such **Claim Expenses**.

3.    With respect to any **Liability Coverage Part**:

a.    The **Insureds** agree not to offer to settle or to settle any **Claim**, incur any **Claim Expenses** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with respect to any **Claim** without the Insurer's written consent, which shall not be unreasonably withheld.  The Insurer shall not be liable for or as a result of any offer to settle, settlement, **Claim Expenses**, assumed obligation, admission or stipulated judgment to which it has not given its prior consent.

b.    The Insurer shall have the right and shall be given the opportunity to make any investigation it deems necessary and to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that is or reasonably could be covered in whole or in part by the **Liability Coverage Part**.

4.    The Insurer may, with the consent of the **Insured**, make any settlement of any **Claim** covered under a **Liability Coverage Part** which the Insurer deems expedient.  If the **Insureds** withhold consent to any such settlement acceptable to the claimant, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed the sum of:

a.    the amount for which the Insurer could have settled such **Claim**; and

b.    **Claim Expenses** accrued as of the date such settlement was proposed in writing by the Insurer to the **Insured**.

B.    COOPERATION

With respect to all Coverage Parts, the **Insureds** agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim** or **Coverage Event**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery.

## SECTION VIII – REPORTING AND NOTICE

A.    Solely with respect to any **Liability Coverage Part**:

1.    As a condition precedent to their rights under any **Liability Coverage Part**, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after an **Executive Officer** or an employee of the **Company's** office of general counsel, risk management or functionally equivalent departments, if any, first learns of such **Claim**, but in no event later than (i) ninety (90) days after expiration of the **Policy Period**, or (ii) the expiration of the **Extended Reporting Period**, if exercised.

2.    If during the **Policy Period** or the **Extended Reporting Period**, if exercised, the **Insureds** become aware of circumstances that could give rise to a **Claim** against the **Insureds** and give written notice of such circumstances to the Insurer during the **Policy Period** or the **Extended Reporting Period**, if exercised, then any **Claims** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period**.  No coverage is afforded under any **Liability Coverage Part** for fees, expenses or other loss incurred in connection with such potential **Claim** prior to the time such notice results in a **Claim**.

3.    The **Insureds** shall include within any notice of **Claim** or circumstance a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insureds** first became aware of the **Claim** or circumstances.

B.    Solely with respect to any **Non-Liability Coverage Part**, as a condition precedent to their rights under such Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Coverage Event** pursuant to the applicable notice provision in such **Non-Liability Coverage Part**.

C.    Except as otherwise provided in this policy, all notices under any provision of this policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party.  Notice to the **Insureds** may be given to the **Parent Company** at the address as shown in Item 1 of the Declarations.  Notice to the Insurer shall be given to the respective address shown in Item 5 of the Declarations.  Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or in the case of courier, email or fax, one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal.

## SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES

A.    REPRESENTATIONS

The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and complete, are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy.  This policy is issued in reliance upon the truth and completeness of such representations.

B.    SEVERABILITY

The **Application** shall be construed as a separate application for coverage by each of the **Insureds**.  If with respect to any Coverage Part the **Application** contains any misrepresentation or omission (i) made with the intent to deceive, or (ii) which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under such Coverage Part, then such Coverage Part shall be void *ab initio* as to:

1.    any **Company** to the extent such **Company** indemnifies an **Insured Person** who knew the facts that were not truthfully disclosed in the **Application**; and

2.    any **Company** and its **Subsidiaries** and **Plans** if an **Executive Officer** of such **Company** knew the facts that were not truthfully disclosed in the **Application**;

whether or not such **Executive Officer** or **Insured Person** knew the **Application** contained such misrepresentation or omission.  No knowledge of one **Insured Person** shall be imputed to any other **Insured Persons** for purposes of this Section IX.

C.    NON-RESCINDABLE COVERAGES

The Insurer shall not have the right to rescind or void, in whole or in part, the coverage provided under any **Liability Coverage Part** for any **Non-Indemnifiable Loss** incurred by the **Insured Persons**.

## SECTION X – TERRITORY AND VALUATION

Coverage under any **Liability Coverage Part** shall extend to **Wrongful Acts** taking place, **Loss** incurred, or **Claims** made anywhere in the world, to the extent legally permitted.

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

## SECTION XI – OTHER INSURANCE

Solely with respect to any **Liability Coverage Part**, if any **Loss** resulting from any **Claim** is insured by any other valid and collectible policy issued to any **Insured**, then this policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

## SECTION XII – SUBROGATION

Solely with respect to any **Liability Coverage Part**, in the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds**' rights of recovery, including without limitation any right of recovery from the **Company** for **Loss** incurred by **Insured Persons** which is indemnifiable by the **Company**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insureds**. In any subrogation claim against the **Company** to enforce the **Insured Persons**' right of indemnification, the shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification to the fullest extent permitted by law, and the Insurer's recovery from the **Company** for such **Loss** shall not exceed the Retention applicable to the **Company** for such **Loss**. The Insurer shall not exercise its right of subrogation against an **Insured Person** with respect to payments under any **Liability Coverage Part** unless and to the extent one of the following respective exclusions in such **Liability Coverage Part** applies to such **Insured Person**:

| Liability Coverage Part | Exclusions |
|---|---|
| Management and Company Liability | Sections IV.I and J |
| Employment Practices and Third Party Discrimination Liability | Section III.G |
| Fiduciary Liability | Section III.E |

Any such recoveries, less the cost of obtaining them, will be distributed as follows:

1.  to the **Insured** and the insurer of any other policy specifically excess of this policy, until they are reimbursed for any **Loss** that they sustain that exceeds the sum of this policy's Limit of Liability and applicable Retention, if any;

2.  then to the Insurer, until the Insurer is reimbursed for the payment made under this policy; and

3.  then to the **Insureds**, until they are reimbursed for their payment of any applicable Retention.

## SECTION XIII – ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the Insurer.

The titles and headings to the various sections, subsections and endorsements of this policy, as well as the schedule of endorsements attached to this policy, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## SECTION XIV – PAYMENT PRIORITY

If the **Loss** due and owing by the Insurer under a **Liability Coverage Part** exceeds the then-remaining Limit of Liability applicable to such **Loss**, the Insurer shall pay such **Loss**, subject to the applicable Limits of Liability, in the following priority:

A.      First, the Insurer shall pay such **Loss** which is **Non-Indemnifiable Loss** incurred by **Insured Persons**;

B.      Second, the Insurer shall pay all other **Loss** covered under the **Liability Coverage Part**.

Subject to the foregoing paragraph, the Insurer shall, upon receipt of a written request from the **Parent Company**, delay any payment of **Loss** due and owing to the **Company** until such time as the **Parent Company** designates, provided the Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

## SECTION XV – CANCELLATION AND NONRENEWAL

The **Parent Company** may cancel this policy or any Coverage Part by mailing or delivering to the Insurer advance written notice of cancellation. The Insurer may cancel this policy or any Coverage Part only for nonpayment of premium. In such event, the Insurer shall mail or deliver to the **Parent Company** written notice of cancellation at least ten (10) days before the effective date of such cancellation. Any notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date. If this policy is cancelled, the Insurer will send to the **Parent Company** the premium refund, computed pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund. If the Insurer decides not to renew this policy, the Insurer will mail or deliver to the **Parent Company** written notice of non-renewal at least sixty (60) days prior to the end of the **Policy Period**.

## SECTION XVI – AUTHORIZATION CLAUSE

By acceptance of this policy, the **Parent Company** agrees to act on behalf of the **Insureds** with respect to giving and receiving notices of **Claim** or termination, paying premiums and receiving any return premiums that may become due under this policy, agreeing to endorsements, and giving or receiving notices provided for in this policy, and the **Insureds** agree that the **Parent Company** shall act on their behalf.

## SECTION XVII – BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this policy.

In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the **Company** and the **Insureds** hereby (i) waive and release any automatic stay or injunction which may apply in such proceeding to this policy or its proceeds under such bankruptcy law, and (ii) agree not to oppose or object to any efforts by the Insurer, the **Company** or any **Insured** to obtain relief from any such stay or injunction.

# PRIVATE COMPANY LIABILITY POLICY
## MANAGEMENT AND COMPANY LIABILITY COVERAGE PART

<u>TABLE OF CONTENTS</u>

SECTION I – INSURING CLAUSES ...................................................................................................................1

A.    INSURED PERSON LIABILITY COVERAGE ..........................................................................1

B.    COMPANY REIMBURSEMENT COVERAGE ........................................................................1

C.    COMPANY LIABLITY COVERAGE ........................................................................................1

D.    DERIVATIVE DEMAND INVESTIGATION COSTS ...............................................................1

SECTION II – EXTENSIONS ............................................................................................................................1

A.    PUBLIC COMPANY COVERAGE QUOTE ...........................................................................1

B.    OUTSIDE POSITION COVERAGE .......................................................................................1

SECTION III – DEFINITIONS ...........................................................................................................................2

SECTION IV – EXCLUSIONS...........................................................................................................................4

# PRIVATE COMPANY LIABILITY POLICY
## MANAGEMENT AND COMPANY LIABILITY COVERAGE PART

## SECTION I – INSURING CLAUSES

A.    INSURED PERSON LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

B.    COMPANY REIMBURSEMENT COVERAGE

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

C.    COMPANY LIABLITY COVERAGE

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay on account of a **Claim** first made against the **Company** during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

D.    DERIVATIVE DEMAND INVESTIGATION COSTS

The Insurer shall pay on behalf of the **Company** all **Investigative Costs** on account of a **Securityholder Derivative Demand** first received by the **Company** during the **Policy Period** or the Extended Reporting Period, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, provided (i) the Insurer's maximum liability for all **Investigative Costs** covered under this Insuring Clause D shall be $100,000, which is part of and not in addition to the applicable Limits of Liability set forth in Items 2 and 6 of the Declarations, and (ii) no Retention shall apply to this Insuring Clause D.

## SECTION II – EXTENSIONS

A.    PUBLIC COMPANY COVERAGE QUOTE

If during the **Policy Period** the **Parent Company**:

1.       gives prior written notice to the Insurer that a **Company** intends to publicly offer or sell any debt or equity securities or to otherwise become a publicly-held organization described in Section 12(g) of the Securities and Exchange Act of 1934, as amended ("Public Transaction"), and

2.       provides to the Insurer all information requested by the Insurer with respect to the Public Transaction,

the Insurer shall provide to the **Company** during the **Policy Period** a quotation for coverage under the Insurer's then-standard Public Company Directors and Officers Insurance Policy, provided such coverage shall be subject to such terms, conditions, limits, retentions and premium as the Insurer may require in its sole discretion.  No coverage is afforded pursuant to this Subsection II.A unless and until the **Parent Company** agrees in writing to such terms, conditions, limits, retentions and premium, and the Insurer agrees in writing to bind such coverage.  This Subsection II.A shall not impact the Insurer's ability to cancel or non-renew this policy as provided in Section XV of the General Terms and Conditions.

B.    OUTSIDE POSITION COVERAGE

Subject to the other terms and conditions applicable to this Coverage Part, Insuring Clause A and Insuring Clause B include coverage for **Insured Persons** while serving in an **Outside Position**.  Such coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** in which the **Insured Person** serves in the **Outside Position**.  Payment by the Insurer or any affiliate of the Insurer under another policy as a result of a **Claim** against an **Insured**

**Person** in an **Outside Position** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this policy with respect to such **Claim**.

## SECTION III – DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows:

A.  **Claim** means:

1.  a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations;

2.  a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3.  a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

4.  an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5.  a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6.  an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7.  an arbitration or mediation proceeding against any **Insured**;

for a **Wrongful Act**, including any appeal therefrom.

Solely with respect to Insuring Clause A, **Claim** also means any request, demand or subpoena by a regulatory, administrative, governmental or similar authority to interview or depose an **Insured Person**, or to produce documents by an **Insured Person**, in his or her capacity as such.

B.  **Insured Persons** means:

1.  any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

2.  any one or more natural persons not described in subsection 1 above who were, now are or shall become **Employees** of the **Company**; and

3.  any one or more natural persons described in subsection 1 above while serving in an **Outside Position**;

provided that **Employees** described in subsection 2 above shall not be considered **Insured Persons** for purposes of Subsection II.B and Exclusions C or D in Section IV of this Coverage Part.

C.  **Insureds** means the **Insured Persons** and, solely with respect to Insuring Clause B, Insuring Clause C and Insuring Clause D, the **Company**.

D.  **Investigative Costs** means reasonable and necessary fees (including attorney's fees and expert's fees) and expenses (other than wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Company** whether it is in the best interest of the **Company** to prosecute the claims alleged in a **Securityholder Derivative Demand**.

E.  **Loss** means the total amount the **Insureds** become legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses** and civil money penalties assessed against an **Insured** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B) or for a violation of any federal, state, local or foreign election law if such election law violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

Solely with respect to Insuring Clause D, **Loss** means **Investigative Costs**.

**Loss** does not include any of the following, provided this sentence does not exclude **Claim Expenses** with respect to any of the following:

1.   any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2.   taxes, fines or penalties imposed by law, other than civil money penalties expressly referenced above;

3.   any amount incurred by the **Company** that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets;

4.   any amount incurred by the **Company** to comply with any injunctive or other equitable relief or any agreement to provide such relief;

5.   any disgorgement or restitution of ill-gotten gain or rescissionary damages; or

6.   matters uninsurable under the law pursuant to which this policy is construed.

F.   **Outside Entity** means:

1.   any organization chartered and operated as a not-for-profit organization;

2.   any for-profit organization in which the **Company** owns an equity interest, provided such organization is neither a financial institution nor an organization whose securities are publicly owned or traded; or

3.   any other organization specifically included as an **Outside Entity** by endorsement to this policy; provided such organization is not included in the definition of **Company**.

G.   **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person**, if service in such position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by, the **Company**.

H.   **Personal Injury** means false arrest, wrongful detention or imprisonment, malicious prosecution, defamation including libel and slander, invasion of privacy or wrongful entry or eviction.

I.   **Securityholder Derivative Demand** means:

1.   any written demand, by a securityholder of a **Company**, upon the Board of Directors or Board of Managers of such **Company**, to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

2.   any lawsuit by a securityholder of a **Company**, brought derivatively on behalf of such **Company**, against an **Insured Person** for a **Wrongful Act** without first making a demand as described in subparagraph 1 above.

J.   **Wrongful Act** means:

1.   any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any of the **Insured Persons** in their capacity as such or in an **Outside Position**, or with respect to Insuring Clause C, by the **Company**; or

2.   any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity or in an **Outside Position**.

## SECTION IV – EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A.    based upon, arising out of, or attributable to any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given prior to inception of this policy under any prior directors and officers liability or comparable insurance policy or coverage part;

B.    based upon, arising out of, or attributable to any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 6 of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Acts** alleged or underlying such prior **Claim**;

C.    brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

1.    a **Claim** that is a derivative action brought or maintained on behalf of the **Company** by one or more persons who are not **Insured Persons** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company** or any **Insured Person** or if the only such solicitation, assistance or participation by the **Company** and **Insured Persons** is (i) solely pursuant to, or in compliance with, a subpoena or similar legal process, or (ii) protected pursuant to any whistleblower statute;

2.    a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part;

3.    a **Claim** brought by an **Insured Person** who has not served as an **Insured Person** for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such three (3) year period;

4.    a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee for such **Company**, or any assignee of such trustee, examiner, receiver, or similar official or creditors committee; or

5.    a **Claim** by or on behalf of the **Company** brought and maintained in any non-common law jurisdiction outside the United States;

D.    for a **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor or trustee of such entity, provided this exclusion shall not apply to:

1.    a **Claim** that is a derivative action brought or maintained on behalf of such **Outside Entity** by one or more persons who are not directors, officers, managers or trustees of the **Outside Entity** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** or if the only such solicitation, assistance or participation by the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** is (i) solely pursuant to or in compliance with a subpoena or similar legal process, or (ii) protected pursuant to any whistleblower statute;

2.    a **Claim** for an employment-related **Wrongful Act** brought or maintained by a director, officer, manager, governor or trustee of such **Outside Entity**;

3.    a **Claim** brought by a director, officer, manager, governor or trustee of such **Outside Entity** who has not served as such for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation by, or active assistance or participation of, such **Outside Entity** or any other director, officer, manager, governor or trustee of such **Outside Entity** who is serving or has served as such within such three (3) year period;

4.    a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee for such **Outside Entity**, or any assignee of such trustee, examiner, receiver, similar official or creditors committee; or

5.  a **Claim** by or on behalf of the **Outside Entity** brought and maintained in any non-common law jurisdiction outside the United States;

E.  for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the **Company**;

F.  for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any allegations of mental anguish or emotional distress in a **Claim** against **Insured Persons** for **Personal Injury**;

G.  based upon, arising out of or attributable to:

1.  the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

2.  any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

    provided this exclusion shall not apply to **Non-Indemnifiable Loss**;

H.  based upon, attributable to, or arising out of any **Wrongful Act** committed by any **Insured Person** serving in any position or capacity in any entity, other than the **Company** or **Outside Entity**, even if the **Company** directed or requested the **Insured Person** to serve in such other position or capacity.

I.  based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

J.  based upon, arising out of or attributable to such **Insured Person** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if (i) a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage, or (ii) such **Insured** agrees to repay to the **Company** such profit, remuneration or financial advantage;

K.  based upon, arising out of or attributable to (i) the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities, or (ii) the actual or alleged violation of any federal, state, local or common or foreign law relating to debt or equity securities; provided this exclusion shall not apply to any **Claim**:

1.  based upon, arising out of or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities in a private-placement transaction exempt from registration under the Securities Act of 1933, as amended;

2.  based upon, arising out of or attributable to the failure of the **Company** to undertake or successfully complete a public offering of securities, including any "roadshow" disclosures or other activities in connection with such an unsuccessful public offering; or

3.  if prior to such purchase or sale, or offer or solicitation of an offer to purchase or sell, securities (i) the Insurer agrees in writing to delete this exclusion with respect to such purchase, sale, offer or solicitation, and (ii) the **Company** pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such deletion;

L.  solely with respect to Insuring Clause C:

1.  for any actual or alleged liability of the **Company** under any written contract or agreement, except to the extent that the **Company** would have been liable in the absence of such contract or agreement;

2.  for **Personal Injury**;

3.  for taxes;

4.  for the rendering of or failure to render professional services; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such;

5.	based upon, arising out of or attributable to an actual or alleged violation of the Sherman Anti-Trust Act, the Clayton Act or the Federal Trade Commission Act, as amended, or any other federal, state, local, common or foreign laws involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing, restraint of trade, unfair trade practices or tortious interference with another's actual or prospective business or contractual relationships or opportunities; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such;

6.	based upon, arising out of or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade secrets or the unauthorized disclosure of or access to confidential information; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such; or

7.	based upon, arising out of or attributable to the actual or alleged malfunction, defect or failure of any goods or products manufactured, distributed, sold, installed, marketed, developed or processed by the **Company**; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such; or

M.	which constitutes an **Employment Practices Claim** or **Third Party Discrimination Claim**.

For the purpose of determining the applicability of any Exclusion set forth in this Section IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under Insuring Clause C only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

# PRIVATE COMPANY LIABILITY POLICY

## EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION COVERAGE PART

<u>TABLE OF CONTENTS</u>

SECTION I – INSURING AGREEMENTS............................................................................................1

A.    EMPLOYMENT PRACTICES LIABILITY COVERAGE...........................................................1

B.    THIRD PARTY DISCRIMINATION LIABILITY COVERAGE.....................................................1

SECTION II – DEFINITIONS .........................................................................................................1

SECTION III – EXCLUSIONS .......................................................................................................2

# PRIVATE COMPANY LIABILITY POLICY

## EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION COVERAGE PART

## SECTION I – INSURING AGREEMENTS

A.    EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period**, if exercised, and reported to the Insurer in accordance with Section VIII. of the General Terms and Conditions, for an **Employment Practices Wrongful Act** taking place before or during the **Policy Period**.

B.    THIRD PARTY DISCRIMINATION LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Third Party Discrimination Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period**, if exercised, and reported to the Insurer in accordance with Section VIII. of the General Terms and Conditions,  for a **Third Party Discrimination Wrongful Act** taking place before or during the **Policy Period**.

## SECTION II – DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows:

A.    **Claim** means an **Employment Practices Claim** or a **Third Party Discrimination Claim**.

B.    **Employment Practices Claim** means:

1.    a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations;

2.    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3.    an administrative or regulatory proceeding against any **Insured**, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, commenced by the filing of a notice of charges or similar document;

4.    a civil, administrative or regulatory investigation of any **Insured** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

5.    an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

6.    an arbitration or mediation proceeding against any **Insured**;

brought by or on behalf of any past, present, future or prospective  **Employee** in their capacity as such, for an **Employment Practices Wrongful Act**, including any appeal therefrom; provided **Employment Practices Claim** does not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

C.    **Employment Practices Wrongful Act** means any actual or alleged:

1.    breach of any express or implied employment contract;

2.    violation of any law or public policy concerning discrimination in employment whether based upon race, national origin, religion, sex, sexual preference, age, marital status, disability, medical leave or genetic predisposition;

3.    employment-related torts including without limitation wrongful termination, failure or refusal to hire or promote; wrongful discipline; wrongful reference, deprivation of a career opportunity, demotion or adverse change in terms, conditions or status of employment; wrongful failure to grant tenure;

humiliation; retaliation for asserting a legal right; workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications; negligent hiring, retention, supervision, training or performance evaluation; and employment-related misrepresentation, defamation, invasion of privacy or infliction of emotional distress; or

4.  wrongful failure or refusal to adopt or enforce workplace or employment practices, policies or procedures, solely as respects employment-related discrimination or harassment.

D.  **Independent Contractor** means any natural person who is not an **Employee** and who is working for a **Company** in the capacity of an independent contractor pursuant to an express contract or agreement with the **Company** which governs the nature of such person's engagement.

E.  **Insured Persons** means:

1.  any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, **Manager**, officer, **Employee** (including employed lawyers solely in their capacity as an **Employee**), advisory director, or member of a duly constituted committee or board of the **Company**, or their functional equivalent;

2.  any **Independent Contractor**, but only if the **Company** agrees in writing within thirty (30) days after the **Claim** is made to provide indemnification to such **Independent Contractor** for any **Loss** arising out of such **Claim**; provided any coverage under this Coverage Part for any such **Independent Contractor** shall be specifically excess of any indemnification or insurance otherwise available to such **Independent Contractor** from any other source.

F.  **Insureds** means the **Insured Persons** and the **Company**.

G.  **Loss** means the total amount the **Insureds** become legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including back pay, front pay and punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses**, prevailing plaintiff attorney's fees awarded pursuant to Section 1988 of the Civil Rights Act, and liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act or the Family Medical Leave Act.

The insurability of such punitive, exemplary, liquidated and multiple damages or attorneys' fees shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following:

1.  any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2.  taxes, fines or penalties imposed by law; or

3.  matters uninsurable under the law pursuant to which this policy is construed.

H.  **Third Party Discrimination Claim** means:

1.  a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations;

2.  a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3.  an administrative or regulatory proceeding against any **Insured**, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, commenced by the filing of a notice of charges or similar document;

4.  a civil, administrative or regulatory investigation of any **Insured** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

5.  an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

6.      an arbitration or mediation proceeding against any **Insured**;

brought by or on behalf of a **Third Party** in their capacity as such, for a **Third Party Discrimination Wrongful Act**, including any appeal therefrom.

I.      **Third Party Discrimination Wrongful Act** means any actual or alleged:

1.      discrimination against a **Third Party**, including but not limited to discrimination based upon race, national origin, religion, sex, sexual preference, age, marital status, disability, or genetic predisposition; or

2.      harassment of a **Third Party**, including but not limited to sexual or gender harassment, as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin based harassment.

J.      **Third Party** means any natural person who is a customer, vendor, service provider, client, or other business invitee of the Company, provided, however, **Third Party** shall not include an **Employee.**

K.      **Wrongful Act** means:

1.      a Employment Practices Wrongful Act; or

2.      a Third Party Discrimination Wrongful Act.


## SECTION III – EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A.      based upon, arising out of, or attributable to any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given prior to inception of this policy under any prior employment practices liability or comparable insurance policy or coverage part;

B.      based upon, arising out of, or attributable to any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 6 of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Act** alleged or underlying such prior **Claim**;

C.      for an actual or alleged violation of the responsibilities, obligations or duties imposed by:

1.      any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law,

2.      **ERISA** (except Section 510 thereof),

3.      the Fair Labor Standards Act (except the Equal Pay Act) and any other law concerning wage and hour practices, including but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices,

4.      the National Labor Relations Act,

5.      the Worker Adjustment and Retraining Notification Act,

6.      the Consolidated Omnibus Budget Reconciliation Act of 1985,

7.      the Occupational Safety and Health Act,

8.      the Racketeer Influenced and Corrupt Organizations Act,

9.      the Federal False Claims Act, or

10.     rules or regulations promulgated under any of such statutes or laws, amendments thereto or similar provisions of any federal, state, local or foreign statutory law or common law;

but this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law, rule or regulation or for any other actual or alleged violation of any whistleblower statue or law;

D.     for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any **Employment Practices Claim** for employment-related emotional distress, mental anguish or humiliation;

E.     based upon, arising out of or attributable to:

    1.    the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

    2.    any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

    provided this exclusion shall not apply to **Non-Indemnifiable Loss**;

F.     based upon, arising out of, or attributable to any actual or alleged breach of any contract or agreement, provided such contract or agreement specifies the terms of the **Company's** engagement of an **Independent Contractor**;

G.    based upon, arising out of, or attributable to any deliberately fraudulent or deliberately criminal act or omission committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission;

H.    based upon, arising out of, or attributable to the employment reinstatement or continued employment of the claimant by the **Company** or, if the **Company** has the option pursuant to an adjudication or settlement to reinstate the claimant as an **Employee** but fails to do so, any **Loss** constituting front pay, future damages or other future economic relief or the equivalent thereof with respect to such claimant; or

I.     for:

    1.    the cost of any non-monetary relief, including without limitation (i) any costs associated with compliance with any injunctive relief of any kind or nature imposed by any judgment or settlement, or (ii) any costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans with Disabilities Act and any amendments thereto or any similar federal, state, local or foreign statute, regulation, or common laws;

    2.    compensation earned by the claimant in the course of employment but not paid by the **Company**, including any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days, sick days, prerequisites, stock options or similar rights;

    3.    amounts owing under or assumed by the **Insured** pursuant to a written contract with or written severance obligation of the **Company**; but this exclusion shall not apply if and to the extent that liability would have attached to the **Insureds** in the absence of the written contract with or obligation of the **Company**; or

    4.    medical, insurance or other benefits (or the equivalent value thereof) to which the claimant allegedly was entitled or would have been entitled had the **Company** provided the claimant with a continuation or conversion of insurance.

For the purpose of determining the applicability of any Exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

# PRIVATE COMPANY LIABILITY POLICY
## FIDUCIARY LIABILITY COVERAGE PART

<u>TABLE OF CONTENTS</u>

SECTION I – INSURING AGREEMENTS..........................................................................................1

A.    FIDUCIARY LIABILITY COVERAGE ..................................................................................... 1

B.    VOLUNTARY SETTLEMENT PROGRAMS........................................................................... 1

SECTION II – DEFINITIONS ........................................................................................................1

SECTION III – EXCLUSIONS .......................................................................................................3

# PRIVATE COMPANY LIABILITY POLICY
## FIDUCIARY LIABILITY COVERAGE PART

## SECTION I – INSURING AGREEMENTS

A.    FIDUCIARY LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

B.    VOLUNTARY SETTLEMENT PROGRAMS

The Insurer shall pay on behalf of the **Insureds** any **Voluntary Settlement** and **Claim Expenses** which the **Insureds** become legally obligated to pay resulting from a **Settlement Program Notice** first given to the Insurer during the **Policy Period**, provided such **Voluntary Settlement** and **Claim Expenses** are incurred after such **Settlement Program Notice** is first given to the Insurer. The Insurer's maximum liability under this Insuring Clause B for all covered **Voluntary Settlements** and **Claim Expenses**, combined, shall be one hundred thousand dollars ($100,000), which is part of and not in addition to the applicable Limits of Liability set forth in Items 2 and 6 of the Declarations.

## SECTION II – DEFINITIONS

When used in this Coverage Part, the following terms, whether in the singular or plural, are defined as follows:

A.    **Administration** means (i) counseling employees, beneficiaries or **Plan** participants with respect to any **Plan**, (ii) providing interpretations with respect to any **Plan**, (iii) handling records in connection with any **Plan**, and (iv) enrolling, terminating or canceling employees, beneficiaries or participants under any **Plan**.

B.    **Claim** means:

    1.    a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations;

    2.    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

    3.    a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

    4.    an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

    5.    a civil, criminal, administrative or regulatory investigation (including a fact-finding investigation by the Department of Labor, Pension Benefit Guaranty Corporation or similar authority) of any **Insured** commenced by the service upon or other receipt by the **Insured** of a target letter or other written notice from the investigating authority identifying by name the **Insured** as a person against whom a proceeding may be commenced;

    6.    an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

    7.    an arbitration or mediation proceeding against any **Insured**;

    for a **Wrongful Act**, including any appeal therefrom.

    Solely with respect to Insuring Clause B, **Claim** means a **Settlement Program Notice**.

C.    **Insured Persons** means any one or more natural persons who were, now are or shall become duly elected or appointed directors, trustees, governors, **Managers**, officers, **Employees** (including employed lawyers solely in their capacity as an **Employee**), advisory directors or members of a duly constituted committee or board of any **Company** or **Plan** or their functional equivalent.

D.    **Insureds** means:

    1.    the **Insured Persons**;

2.      the **Company**; and

3.      the **Plans**.

E.    **Loss** means the total amount the **Insureds** become legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses**, and:

(a)      the five percent (5%) or less or the twenty percent (20%) or less civil penalties imposed under §502(i) or (l) of **ERISA**;

(b)      civil penalties imposed upon an **Insured** for violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, or the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended, provided that the Insurer's maximum aggregate liability for all such civil money penalties under this Coverage Part shall be subject to a sublimit of twenty-five thousand dollars ($25,000) which shall be the maximum aggregate amount that the Insurer shall pay for all such penalties and shall be part of, and not in addition to, the applicable Limits of Liability set forth in Items 2 and 6 of the Declarations; or

(c)      civil penalties imposed upon an **Insured** by the United Kingdom Secretary of State for Social Services or by the United Kingdom Occupational Pensions Regulatory Authority, pursuant to the English Pension Scheme Act 1993, the English Pensions Act 1995, or rules or regulations thereunder, provided any coverage for such civil penalties applies only if the funds or assets of the subject **Plan** are not used to fund, pay or reimburse the premium for this Coverage Part.

Solely with respect to Insuring Clause B, **Loss** means a **Voluntary Settlement** and **Claim Expenses**.

The insurability of such punitive, exemplary or multiple damages, civil penalties or **Voluntary Settlements** shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following, provided this sentence does not exclude **Claim Expenses** with respect to any of the following:

1.      any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2.      taxes, fines or penalties imposed by law, other than civil penalties expressly referenced in (a), (b) or (c) above;

3.      any costs incurred by the **Company** or **Plan** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief; or

4.      matters uninsurable under the law pursuant to which this policy is construed.

F.    **Plan** means:

1.      any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each is defined in **ERISA**, which was, is now, or hereafter becomes sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees of the **Company**;

2.      any other employee benefit plan or program not subject to **ERISA** sponsored solely by the **Company** for the benefit of the employees of the **Company**, including any fringe benefit, excess benefit plan or voluntary employees' beneficiary association;

3.      any employee benefit plan or program otherwise described in paragraphs 1 or 2 above while such plan or program is being actively developed, formed or proposed by any **Company** prior to the formal creation of such plan or program; provided, however, no coverage is afforded under this Coverage Part for any **Claim** against an **Insured** in a settlor or similar uninsured capacity with respect to any plan or program; and

4.      any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for employees of the **Company**.

**Plan** shall not include any "multiemployer plan" or "employee stock ownership plan" as defined by **ERISA**, unless such plan is specifically included as a **Plan** by endorsement to this policy.

G.   **Settlement Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the United States Internal Revenue Service, United States Department of Labor or any other domestic or foreign governmental authority.  Such programs include, without limitation, the Employee Plans Compliance Resolution System, Audit Closing Agreement Program, Voluntary Compliance Resolution Program, Walk-in Closing Agreement Program, Administrative Policy Regarding Self-Correction, Tax Sheltered Annuity Voluntary Correspondence Program, Delinquent Filer Voluntary Compliance Program, and Voluntary Fiduciary Correction Program.

H.   **Settlement Program Notice** means prior written notice to the Insurer by any **Insured** of the **Insured's** intent to enter into a **Settlement Program**.

I.   **Voluntary Settlement** means any fees, fines or penalties paid by an **Insured** to a governmental authority pursuant to a **Settlement Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation; provided **Voluntary Settlement** shall not include (i) any costs to correct the non-compliance, or any other charges, expenses, taxes or damages; or (ii) any fees, fines or penalties relating to a **Plan** which, as of the earlier of the inception date of this policy or the inception date of the first policy in an uninterrupted series of policies issued by the Insurer of which this policy is a direct or indirect renewal or replacement, any **Insured Person** knew to be actually or allegedly non-compliant.

J.   **Wrongful Act** means:

1.   any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by the **Insureds** in the discharge of their duties as, or solely by reason of their status as, fiduciaries of any **Plan**, or

2.   any negligent act, error or omission actually or allegedly committed or attempted by the **Insureds** in the **Administration** of a **Plan**.

## SECTION III – EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

A.   based upon, arising out of, or attributable to any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given prior to inception of this policy under any prior fiduciary liability or comparable insurance policy or coverage part;

B.   based upon, arising out of, or attributable to any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date set forth in the Coverage Schedule in Item 6 of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Act** underlying or alleged therein;

C.   for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any **Claim Expenses** on account of a **Claim** for emotional distress or mental anguish;

D.   based upon, arising out of or attributable to:

1.   the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

2.   any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

provided this exclusion shall not apply to (i) **Non-Indemnifiable Loss**; or (ii) any **Claim** by or on behalf of a beneficiary or participant in a **Plan** for diminution in value of any securities owned by the **Plan**;

E.   based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

F.  for liability of others assumed by the **Insured** under any oral, written or implied contract or agreement, but this exclusion shall not apply to the extent (i) the **Insured** would have been liable in the absence of such contract or agreement; or (ii) the liability was assumed in accordance with or under the trust agreement or equivalent document pursuant to which the **Plan** was established;

G.  based upon, arising out of, or attributable to any actual or alleged obligation of any **Insured** pursuant to any government-mandated insurance for worker's compensation, unemployment, social security or disability benefits; provided this exclusion shall not apply to any actual or alleged obligation of any **Insured** pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 or Health Insurance Portability and Accountability Act of 1996, as amended;

H.  for discrimination in violation of any law other than **ERISA**; or

I.  if such **Loss** constitutes:

1.  (i) benefits due or to become due under any **Plan**, or (ii) benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, or (iii) that portion of any settlement or judgment which constitutes such benefits; provided this Exclusion (I)(1) shall not apply to the extent that recovery for such benefits is based upon a covered **Wrongful Act** by an **Insured Person** and such benefits are payable as a personal obligation of such **Insured Person**;

2.  contributions owed by the **Company** to any **Plan** for which any of the **Insureds** failed to collect from the **Company** unless the failure is because of the negligence of an **Insured**; or

3.  the return or reversion to an employer of any contribution or asset of a **Plan**;

provided this exclusion shall not apply to (i) **Claim Expenses**, or (ii) that portion of a settlement or judgment attributable to **Wrongful Acts** which actually or allegedly cause or contribute to a reduction or loss in the value of a **Plan's** assets or a participant's account in a **Plan** due to investment losses, lost investment opportunities, excessive costs or failure to comply with the participant's investment directions.

For the purpose of determining the applicability of any Exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** (i) of a **Company** shall be imputed to such **Company** and its **Subsidiaries**, and (ii) of a **Plan** shall be imputed to such **Plan**.

This policy is signed by officers of the Company shown on the Declarations page of this policy.

For:     Everest National Insurance Company

_____     _____
President                              Secretary

Endorsement No. 1

# CALIFORNIA AMENDATORY – CANCELLATION AND NONRENEWAL
## (GENERAL TERMS AND CONDITIONS)

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SECTION XV – CANCELLATION AND NONRENEWAL** is amended to read in its entirety as follows:

**SECTION XV – CANCELLATION AND NONRENEWAL**

The **Parent Company** may cancel this policy or any Coverage Part by mailing or delivering to the Insurer advance written notice of cancellation. The Insurer may cancel this policy or any Coverage Part only for nonpayment of premium. For policies that are in effect for 60 days or more, nonpayment of premium includes payment due on a prior policy the Insurer issued and due during the current policy term covering the same risks. In such event, the Insurer shall mail or deliver to the **Parent Company** written notice of cancellation at least 10 days before the effective date of such cancellation. Any notice of cancellation will state the effective date and reason for cancellation. The **Policy Period** will end on that date. If this policy is cancelled, the Insurer will send to the **Parent Company** the premium refund, computed pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund.

If the Insurer decides not to renew this policy, the Insurer will mail or deliver to the **Parent Company** written notice of non-renewal at least sixty (60) days, but no more than one hundred and twenty (120) days, prior to the end of the **Policy Period** or anniversary date.

The Insurer is not required to send notice of nonrenewal in the following situations:

a.   If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between the Insurer and a member of the Insurer's insurance group.
b.   If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the paragraph above.
c.   If the **Parent Company** has obtained replacement coverage, or if the **Parent Company** has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.
d.   If the policy is for a period of no more than 60 days and the **Parent Company** is notified at the time of issuance that it will not be renewed.
e.   If the **Parent Company** requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the **Policy Period**.
f.   If the Insurer has made a written offer to the **Parent Company**, in accordance with the timeframes shown in the paragraph above, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds twenty-five percent (25%).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Endorsement No. 2**

# CALIFORNIA AMENDATORY
# (GENERAL TERMS AND CONDITIONS)

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The following is added to the General Terms And Conditions Section of the Policy:

It is agreed and acknowledged that:

1. punitive, exemplary or multiple damages; and

2. civil money penalties (including **Claim Expenses** related thereto)

are uninsurable under California Code 533.5 and shall not be insured under this policy if California law is applicable to determining the insurability of such damages, penalties, and expenses.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# STATE AMENDATORY INCONSISTENCY ENDORSEMENT



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that the following shall be added to the **GENERAL TERMS AND CONDITIONS PART** of the policy:

If there is an inconsistency between the terms and/or conditions in the base form or the following endorsements, and any attached state amendatory endorsement, where permitted by law the Insurer shall apply those terms and conditions which are more favorable to the **Insured**.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# CONSENT TO SETTLE WITHIN RETENTION ENDORSEMENT



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that:

Subsection VII. DEFENSE AND SETTLEMENT of the **GENERAL TERMS AND CONDITIONS** is amended as follows:

I.  The following is added to the end of Section VII.:

The Insurer's consent to settle any **Claim** shall not be required if the **Insureds** reasonably believe that the total **Loss** to fully and finally resolve such **Claim** in its entirety, is in an amount equal to or less than fifty (50)% off the applicable retention.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



# Declarations Amended Endorsement
## (Extended Reporting Period)

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that **ITEM 4**.    EXTENDED REPORTING PERIOD, of the Declarations is replaced with the following:

      **Item 4**.  EXTENDED REPORTING PERIOD

      Option 1:      A. Additional Premium: **100%** of Annual Premium
                        B. Additional Period: **1** year

      Option 2:      A. Additional Premium: **125%** of Annual Premium
                        B. Additional Period: **3** years

      Option 3:      A. Additional Premium: **150%** of Annual Premium
                        B. Additional Period: **6** years

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# EMPLOYED LAWYERS COVERAGE ENDORSEMENT



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** is amended as follows:

I.  The definition of **Insured Persons** in Section III.B shall be amended to include the following:

Insured Persons also means any **Employed Lawyer**, but solely with respect to a **Claim** arising out of his or her **Wrongful Acts** in rendering or failure to render professional services as a licensed attorney for the benefit of, or on behalf of the **Company**, including the provision of pro-bono or moonlighting services with the consent of the **Company**.

II.  **Employed Lawyer** means any one or more natural persons who, were, are, or shall become employees of the **Company**, other than any **Insured Person** defined in Sections III.B.1, III.B.2, or III.B.3 of the policy.

III.  The following is added to **Section IV. EXCLUSIONS**:

The Insurer shall not be liable to make payment for **Loss** in connection with that portion of any **Claim** made against any **Insured** based upon, arising out of or attributable to:

any **Wrongful Act** taking place when the **Employed Lawyer** was not employed by the **Company** as a licensed attorney; or

any services provided by the **Employed Lawyer** for the benefit or on behalf of: (a) any entity other than a **Company**; or (b) any natural person, except legal services for the benefit or on behalf of an **Insured Person** in their capacity as such.

IV.  The sublimit of liability for all **Loss** for all **Claims** in each **Policy Period** against the **Employed Lawyers** as provided by this endorsement, shall be $1,000,000, which shall apply excess of the applicable retention and such sublimit shall be part of and not in addition to the Aggregate Limit of Liability referenced in **Item 6** of the Declarations, Coverage Part A. Management and Company Liability.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# BREACH OF CONTRACT EXCLUSION



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

## PRIVATE COMPANY LIABILITY POLICY

Solely for purposes of coverage provided under the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** of the policy, it is hereby understood and agreed that:

SECTION IV - Exclusions L.1. is replaced with the following:

based upon, arising out of, or attributable to actual or alleged liability of the **Company** in connection with or under any written contract or agreement; except to the extent that the **Company** would have been liable in the absence of such contract or agreement; provided however this exclusion shall not apply to **Loss** in connection with that portion of any **Claim** brought by one or more shareholders of the **Company** in their capacities as such;

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



# WORKPLACE VIOLENCE COVERAGE ENHANCEMENT ENDORSEMENT

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

Solely for purposes of coverage provided under the **EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION COVERAGE PART** of the Policy, it is agreed that:

I.  The following is added to the **COVERAGE PART**:

   **WORKPLACE VIOLENCE COVERAGE ENHANCEMENT**

   The Insurer shall pay on behalf the **Company**, any **Workplace Violence Expenses** incurred by the **Company** as a result of a **Workplace Violence Incident** first occurring during the **Policy Period**, subject to an aggregate limit of liability for all **Workplace Violence Incidents**, in the amount of $250,000, which amount shall part of and not in addition to the Limit of Liability set forth in Item 2 of the Declarations and which amount shall be excess of a retention amount of $ 0, for all **Workplace Violence Incidents**.

II.  The following definitions are added to **SECTION II** of the **COVERAGE PART**:

   **Crime Event** means any incident based upon, arising out of or attributable to any:

   (a)  strike or similar labor action, war, invasion, act of a foreign enemy or warlike operation (whether declared or not), civil war, or mutiny; or

   (b)  demand for any type of property including but not limited to money or securities, or any form thereof.

   **Premises** means all properties and buildings which the **Company** regularly occupies in conducting its business.

   **Workplace Violence Expenses** means only those reasonable fees, costs, and expenses incurred with the Insurer's prior written consent, such consent not to be unreasonably withheld or delayed:

   (i)  to hire an independent public relations or security consultant or forensic analyst for ninety (90) days;
   (ii)  an independent consultant to provide counseling for **Employees**; or
   (iii)  an independent security guard to provide services for fifteen (15) days;

   immediately following the **Workplace Violence Incident**.

   **Workplace Violence Incident** means any unlawful and intentional actual or threatened deadly force involving the display of a lethal weapon which occurs in or on the **Premises** and which did or could reasonably result in the death or bodily injury of any **Insured Person**. **Workplace Violence Incident** shall not include a **Crime Event**.

III.  Notwithstanding anything in the Policy to the contrary, the Insurer shall not be liable to make any payment for **Workplace Violence Expenses** in connection with any **Workplace Violence Incident** based upon, arising out of or attributable to any **Crime Event**.

   The Insurer shall not be liable to make any payment under this endorsement for:

   (i)  any **Workplace Violence** which occurs at any location other than the **Premises**; or

   (ii)  **Loss** or legal costs, judgments or settlements incurred as a result of any claim, suit or judicial or regulatory legal action brought against any **Company** in connection with **Workplace Violence**;

IV. The **Insureds** shall as a condition precedent to coverage provided by this endorsement, give the Insurer notice in writing of any **Workplace Incident** as soon as practicable after the CEO or CFO or equivalent, of the **Parent Company** first learns of such **Workplace Incident** but in no event later than thirty (30) days after the **Workplace Incident** occurs.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**ESU (PCL) CWM044A-1 0317   © Everest Reinsurance Company, 2017**

# FIDUCIARY LOSS AMENDED ENDORSEMENT



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

Solely for purposes of coverage provided under the **FIDUCIARY LIABILITY COVERAGE PART** of the Policy, it is agreed that:

The definition of **Loss** in Section II.E is replaced with the following:

**Loss** means the total amount the **Insureds** become legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses**, and:

(a) the five percent (5%) or less of civil penalties imposed under §502(i) of **ERISA**, or the twenty percent (20%) or less of civil penalties imposed under §502(I) of **ERISA**;

(b) civil penalties imposed upon an **Insured** for violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, or the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended, provided that the Insurer's maximum aggregate liability for all such civil money penalties under this Coverage Part shall be subject to a sublimit of two hundred and fifty thousand dollars ($1,500,000) which shall be the maximum aggregate amount that the Insurer shall pay for all such penalties and shall be part of, and not in addition to, the applicable Limits of Liability set forth in Items 2 and 6 of the Declarations; or

(c) civil penalties imposed upon an **Insured** by the United Kingdom Secretary of State for Social Services or by the United Kingdom Occupational Pensions Regulatory Authority, pursuant to the English Pension Scheme Act 1993, the English Pensions Act 1995, or rules or regulations thereunder, provided any coverage for such civil penalties applies only if the funds or assets of the subject **Plan** are not used to fund, pay or reimburse the premium for this Coverage Part.

(d) the civil penalties under Section 502(c) of **ERISA**, other than penalties under the Pension Protection Act, subject to the aggregate sublimit of liability set forth in the SCHEUDLE below ("**Section 502(c) Penalties**");

(e) the civil penalties under the Pension Protection Act of 2006, subject to the aggregate sublimit of liability set forth in the SCHEDULE below ("**Pension Protection Act Penalties**");

(f) the civil penalties imposed under rules and regulations (including interim final rules and regulations) provided by governmental agencies (including the U.S. Department of Health and Human Services, the U.S. Department of the Treasury, the U.S. Internal Revenue Service ("IRS"), and the DOL, the Office of Consumer Information and Insurance Oversight, and the Employee Benefits Security Administration), for inadvertent violations by an **Insured** of **Health Care Reform Law**, subject to the aggregate sublimit of liability set forth in the SCHEDULE below ("**Health Care Reform Penalties**"); and "**Health Care Reform Law**" means the Patient Protection and Affordable Care Act ("PPACA") and the Health Care and Education Reconciliation Act of 2010;

(g) the 15% or less tax penalty imposed upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986, with respect to covered judgments, subject to the aggregate sublimit of liability set forth in the SCHEDULE below ("**Section 4975 Penalties**").

Solely with respect to Insuring Clause B, **Loss** means a **Voluntary Settlement** and **Claim Expenses**.

The insurability of such punitive, exemplary or multiple damages, civil penalties or **Voluntary Settlements** shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following, provided this sentence does not exclude **Claim Expenses** with respect to any of the following:

1. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. taxes, fines or penalties imposed by law, other than civil penalties expressly referenced in paragraphs (a)-(g) above;

3. any costs incurred by the **Company** or **Plan** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief; or

4. matters uninsurable under the law pursuant to which this policy is construed.

Solely with respect to coverage provided by this Endorsement:

Coverage under this Endorsement with respect to any **Section 502(c) Penalties**, **Pension Protection Act Penalties**, **Health Care Reform Penalties** and **Section 4975 Penalties**, shall be limited to the respective Sublimits set forth in the SCHEDULE below.

Each sublimit of liability is the maximum limit of the Insurer's liability for all **Loss** under this **COVERAGE PART** that is subject to that sublimit of liability. All Sublimits of liability shall be part of and not in addition to the **COMBINED AGGREGATE LIMIT OF LIABILITY**, any applicable Coverage Part Limit of Liability or Shared Liability Coverage Part Limit of Liability, as referenced in the **DECLARATIONS** and **GENERAL TERMS AND CONDITIONS SECTION** of the Policy, respectively.

### SCHEDULE

| PENALTY | SUBLIMIT |
|---|---|
| Section 502(c) Penalties | $250,000 |
| Pension Protection Act Penalties | $250,000 |
| Health Care Reform Penalties | $250,000 |
| Section 4975 Penalties | $250,000 |

No retention shall be applied to **Section 502(c) Penalties**, **Pension Protection Act Penalties**, **Health Care Reform Penalties, Section 4975 Penalties** or Subsection II.E.(b) above.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



# VOLUNTARY SETTLEMENTS PROGRAM
## ENDORSEMENT

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

Solely for purposes of coverage provided under the **FIDUCIARY LIABILITY COVERAGE PART** of the Policy, it is agreed that Section I.B shall be replaced with the following:

B.    VOLUNTARY SETTLEMENT PROGRAMS

The Insurer shall pay on behalf of the **Insureds** any **Voluntary Settlement** and **Claim Expenses** which the **Insureds** become legally obligated to pay resulting from a **Settlement Program Notice** first given to the Insurer during the **Policy Period**, provided such **Voluntary Settlement** and **Claim Expenses** are incurred after such **Settlement Program Notice** is first given to the Insurer.  The Insurer's maximum liability under this Insuring Clause B for all covered **Voluntary Settlements** and **Claim Expenses**, combined, shall be $250,000, which is part of and not in addition to the applicable Limits of Liability set forth in Items 2 and 6 of the Declarations.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# PRE-DETERMINED RUNOFF ENDORSEMENT




| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that the **GENERAL TERM AND CONDITIONS** is amended as follows:

In the event the **Parent Company** undergoes a transaction outlined in **SECTION VI – CHANGES IN EXPOSURE B.,** the **Parent Company** shall have the right to purchase an extension of coverage for the additional period referenced below, and upon payment of the additional premium outlined below, with respect to such **Liability Coverage Parts(s)**.

 Option 1: A. Additional Premium: **100%** of Annual Premium
 B. Additional Period: **1** year

 Option 2: A. Additional Premium: **125%** of Annual Premium
 B. Additional Period: **3** years

 Option 3: A. Additional Premium: **150%** of Annual Premium
 B. Additional Period: **6** years

Such extension of coverage shall be evidenced and determined by separate endorsement to this Policy.

This extension of coverage shall in no way increase the Insurer's Limit of Liability set forth in the respective Coverage Part Declarations, or the Combined Aggregate Limit of Liability in ITEM 2 of the Declarations.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**




# PROFESSIONAL SERVICES EXCLUSION
# (WITH SHAREHOLDER CARVEBACK)

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

Solely for purposes of coverage provided under the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** of the policy, it is hereby understood and agreed that:

SECTION IV - EXCLUSIONS is amended as follows:

I.  Exclusion L. 4. is deleted.


II. The following exclusion is added to SECTION IV - EXCLUSIONS.

based upon, arising out of, attributable to or in connection with the rendering or failure to render professional services; provided however this exclusion shall not apply to **Loss** in connection with that portion of any **Claim** brought by one or more shareholders of the **Company** in their capacities as such;


**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# PRIVACY NETWORK SECURITY EXCLUSION




| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

## PRIVATE COMPANY LIABILITY POLICY

Solely for purposes of coverage provided under the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** of the policy, it is hereby understood and agreed that:

I.   The following exclusion shall be added to Section IV. **EXCLUSIONS**:

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend any **Private/Network Security Claim**, provided that this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company**, in their capacity as such.

II.   The following definition shall be added to Section III. **DEFINITIONS**:

**Private/Network Security Claim** means any **Claim** made against any **Insured** based upon, arising out of, or attributable to:

(i)   the failure by the **Insured** to properly handle, manage, store, destroy or otherwise control confidential corporate or personally identifiable information, or any violation of a state, federal, foreign identity theft and privacy protection legislation that requires commercial entities that collect personal information to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that personal information has potentially been compromised;

(ii)   a failure in network security, including but not limited to activities performed by the **Insured** to protect against unauthorized access to, unauthorized use of, a denial of service attack directed against, or transmission of malicious code to the **Insured's** computer system; or

(iii)   the unauthorized or surreptitious collection of information by the **Company** or the failure to provide adequate notice that such information is being collected.

III.   The Insurer shall have no duty to defend any **Private/Network Security Claim** in whole or in part, regardless as to whether duty to defend coverage is selected in the Coverage Schedule in Item 6 of the Declarations.

It shall be the duty of the Insureds and not the duty of the Insurer to defend any **Private/Network Security Claim**, and the obligations of the Insurer with respect to any such **Private/Network Security Claim** shall follow the terms and conditions as set forth in Section VII.A.2 of the General Terms and Conditions of the Policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# EMPLOYMENT PRACTICES LIABILITY WAGE & HOUR EXCLUSION



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that:

The **EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION COVERAGE PART** is amended as follows:

Section III. EXCLUSIONS, is amended as follows:

I.   Subsection III.C.3 is replaced with:

  3. a **Wage & Hour Law**

II.  The last paragraph of Subsection III.C is replaced with the following:

  provided that this exclusion shall not apply to **Loss** in connection with that portion of any **Claim**, for the actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law, rule or regulation or for any other actual or alleged violation of any whistleblower statute or law;

III. The following section is added:

  Regarding a **Claim**, for an actual or alleged violation of the responsibilities, obligations or duties imposed by a **Wage & Hour Law**, the Insured shall have the duty to defend such **Claim** and cannot tender the defense to the Insurer.

IV.  **Wage & Hour Law** means: (i) the Fair Labor Standards Act (except the Equal Pay Act) or any similar law; (ii) the Wage Payment and Collection Act or any other federal, state or local law, rule or regulation concerning wage and hour practices, off-the-clock work, overtime compensation, on-call time compensation, compensation for waiting time and dressing time, minimum wage compensation, timely payment of wages,  reimbursement of expenses, classification of employees for the purposes of determining eligibility for overtime, on-call, and minimum wage compensation, meal and rest periods, maintenance of accurate records, conversions, unjust enrichment, or unfair business practices.

  **ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# SPECIFIC MATTER EXCLUSION



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that:

The following shall be added to the **GENERAL TERMS AND CONDITIONS** of the policy:

EXCLUSIONS APPLICABLE TO ALL COVERAGE PARTS:

The Insurer shall not be obligated to defend or be liable to pay **Loss** on account of any: (i) **Claim** based upon, arising out of, or attributable to any **Events**; (ii) investigation, defense, prosecution, adjudication, settlement, disposition or resolution of any **Event(s)**; or (iii) any **Claim** alleging the same or substantially the same **Wrongful Acts**, **Interrelated Wrongful Acts**, facts, circumstances or situations underlying or alleged in any **Events**:

**<u>Events</u>**
AIG Claim #501-519830-001 (Claimant: BROILER CHICKEN ANTITRUST)
AIG Claim #501-478035-001 (Claimant: ALEXANDERWONG)
Zurich Claim #9410555146 (Claimant: Fair Labor Standards Act)

It is further understood and agreed that the Insurer shall not be obligated to defend or be liable for **Loss** on account of any **Claim** alleging, based upon, arising out of, or attributable to or in any way related directly or indirectly, in whole or in part, to an **Interrelated Wrongful Act** (as that term is defined below) regardless of whether such **Claim** involved the same or different claimants, the same or different **Insureds**, the same or different legal causes of action or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement, the term **Interrelated Wrongful Act** means : (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, is similar or related to, or a repetition of, any **Wrongful Act** alleged in any **Event(s)**.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# GT&C AMENDATORY



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

## PRIVATE COMPANY LIABILITY POLICY

In consideration of the premium paid, it is hereby understood and agreed that for purposes of coverage under the policy, the **GENERAL TERMS AND CONDITIONS PART** of the policy is amended as follows:

## DEFINITIONS

Section II.A, II.E, II.G, II.I and II.Y are replaced with the following:

A. **Application** means: (i) all publicly available documents filed by the **Insureds** with the Securities and Exchange Commission during the twelve (12) months preceding the inception of this policy, and (ii) all written materials and other written information submitted by or on behalf of the **Insured** to the Insurer in connection with the underwriting of this Policy.

E. **Claim Expenses** means that part of a **Loss** consisting of the reasonable fees (including attorneys' fees and experts' fees) and expenses incurred by the **Insureds** (except any salaries, wages, overhead, benefits or benefit expenses associated with any **Insured**) in the investigation, defense or appeal of a **Claim**, including the premium for appeal, attachment or similar bonds (without any obligation by the **Insurer** to apply for or furnish such bonds).

G. **Employee** means the following:

1. any past, present, or future natural persons in the regular service of the **Company** in the ordinary course of the **Company's** business, regardless of whether such natural person is in a supervisory, co-worker, or subordinate position or otherwise and whom the **Company** has the right to govern and direct in the performance of such service, including any such natural persons who are leased, temporary, volunteer, part-time or seasonal employees of the **Company**;

2. any natural person independent contractors who are treated under applicable law as employees of the **Company**; and

3. any volunteers of the **Company**;

provided that an individual who is leased to the **Company** or who is contracted to perform work for the **Company** shall qualify as an **Employee** only if the **Company** has agreed to indemnify such leased employees or independent contractors.

I. **Executive Officer** means with respect to any **Company** the natural persons who were, now are or shall become such **Company's** Chief Executive Officer or Chief Financial Officer or, with respect to a **Company** incorporated outside the United States, the functional equivalent of either of the foregoing positions.

Y. **Subsidiary** means:

1. any organization in which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position is owned, in any combination, by one or more **Company(ies)**;

2. any organization in which one or more **Companies**, in any combination, have the right, pursuant to a written contract with or the by-laws, charter, operating agreement or similar document of such organization, to elect or appoint a majority of the directors or equivalent position of such organization; and

3. any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more **Companies**.

4. any not-for-profit entity sponsored exclusively by the **Company**.

5. any **Partnership**, so long as each **General Partner** of the **Partnership** is either (a) the **Parent Company**; (b) a **Subsidiary** other than a **Partnership**; or, (c) a natural person **Insured** of the **Parent Company** or a **Subsidiary** other than a **Partnership.**

The following definitions shall be added to Section II:

**Clean-Up Costs** means any amount incurred to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

**Corporate General Partner** means any **Subsidiary** other than a **Partnership** that was, now is or shall become a duly elected, appointed or designated general partner of a **Partnership.**

**Employment Practices Claim** means:

1. a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations;

2. a civil, or criminal proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3. an administrative or regulatory proceeding against any **Insured**, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, or the Office of Federal Contract Compliance Programs, commenced by the receipt by, or service upon any **Insured** of a notice of charges or similar document;

4. a civil, administrative or regulatory investigation of any **Insured** commenced by the service upon or other receipt by any **Insured** of a formal investigative order;

5. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

6. an arbitration or mediation proceeding against any **Insured**;

brought by or on behalf of any past, present, future or prospective **Employee** in their capacity as such, for an **Employment Practices Wrongful Act**, including any appeal therefrom; provided **Employment Practices Claim** does not include a labor or grievance proceeding pursuant to a collective bargaining agreement or an audit by the Office of Federal Contract Compliance Programs.

**Employment Practices Wrongful Act** means any actual or alleged:

1. breach of any express or implied employment contract;

2. violation of any law or public policy concerning discrimination in employment whether based upon race, national origin, religion, sex, sexual preference or identity, age, marital status, disability, medical leave, pregnancy, military status, or genetic predisposition;

3. employment-related torts including without limitation wrongful termination dismissal or discharge, failure or refusal to hire or promote; wrongful discipline; wrongful reference, deprivation of a career opportunity, demotion or adverse change in terms, conditions or status of employment; wrongful failure to grant tenure; humiliation; retaliation for asserting a legal right; workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications (including workplace bullying), or sexual harassment or hostile work environment; negligent hiring, retention, supervision, training or performance evaluation; and employment-related misrepresentation, defamation, libel, slander, humiliation, invasion of privacy or infliction of emotional distress; or

4. wrongful failure or refusal to adopt or enforce workplace or employment practices, policies or procedures, solely as respects employment-related discrimination or harassment.

**General Partner** means:

1. any natural person who was, is now, or shall become a duly elected, appointed or designated general partner of a **Partnership;**

2. any **Corporate General Partner;**

3. any natural person who was, now is or shall become duly elected or appointed to a management position with a **Partnership** in accordance with the partnership agreement for the **Partnership**; and

4. any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee (excluding the bankruptcy trustee) or equivalent executive of a **Corporate General Partner**, but only with respect to such person acting on behalf of such **Corporate General Partner** in a fiduciary capacity as a general partner to the **Partnership.**

**Partnership** means the following entities:

    Protein Enterprises
    Foster Holdings LP
    Foster Investments LP
    Harding Investors LP

**Third Party** means any natural person who is a customer, vendor, service provider, client, or other business invitee of the **Company**, provided, however, **Third Party** shall not include an **Employee.**

**Third Party Discrimination Claim** means:

1. a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations;

2. a civil, or criminal proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3. an administrative or regulatory proceeding against any **Insured**, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, or the Office of Federal Contract Compliance Programs, commenced by the receipt by, or service upon any **Insured** of a notice of charges or similar document;

4. a civil, administrative or regulatory investigation of any **Insured** commenced by the service upon or other receipt by any **Insured** of a formal investigative order;

5. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

6. an arbitration or mediation proceeding against any **Insured** brought by or on behalf of a **Third Party** in their capacity as such, for a **Third Party Discrimination Wrongful Act**, including any appeal therefrom; provided, **Third Party Discrimination Claim** does not include a labor or grievance proceeding pursuant to a collective bargaining agreement or audit by the Office of Federal Contract Compliance Programs.

**Third Party Discrimination Wrongful Act** means any actual or alleged:

1. discrimination against a **Third Party**, including but not limited to discrimination based upon race, national origin, religion, sex, sexual preference or identity, age, marital status, disability, pregnancy, military status, or genetic predisposition; or

2. harassment of a **Third Party**, including but not limited to sexual or gender harassment, as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin based harassment.

## CHANGES IN EXPOSURE

Section VI.A.2 and VI.A.3 are deleted in their entirety.

## DEFENSE AND SETTLEMENT

Section VII.A.4 is replaced with the following

4. The Insurer may, with the consent of the **Insured**, make any settlement of any **Claim** covered under a **Liability Coverage Part** which the Insurer deems expedient.

Section VII.B is replaced with the following:

B. COOPERATION

With respect to all Coverage Parts, the **Insureds** agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim** or **Coverage Event**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery. The failure of any **Insured Person** to provide such information, assistance or cooperation shall not be imputed to any other **Insured Person**.

## REPORTING AND NOTICE

Subsection VIII.A. is replaced with the following:

1. As a condition precedent to their rights under any **Liability Coverage Part** with respect to a **Claim**, the **Insureds** shall give to the Insurer written notice of such **Claim** made against the **Insureds** as soon as practicable after:

   a. the General Counsel or Risk Manager of the **Company**, or their equivalent, if any, first learns of such **Claim**; or

   b. solely with respect to the **Employment Practices and Third Party Discrimination Liability Coverage Part,** upon the earliest occurrence of the following:

      (i) The **Claim** is brought as a class action (whether or not certified), or by more than one claimant, or a motion is made seeking class certification; or

      (ii) The **Claim** alleges sexual harassment or discrimination by or against a duly elected or appointed corporate director or officer of the **Company**; or

      (iii) Total **Loss** of the **Claim** is reasonably estimated by the Human Resources Department or Office of the General Counsel to exceed 50% of the applicable retention amount;

   but in no event later than (i) ninety (90) days after expiration of the **Policy Period**, or (ii) the expiration of the **Extended Reporting Period**, if exercised.

   Further, with respect to the **Employment Practices and Third Party Discrimination Liability Coverage Part,** the **Insureds** shall be entitled to report **Claims**, other than those listed in b.(i) through b.(iii) above, by submitting a quarterly bordereau of such **Claims**, commencing on the inception date of this policy; provided that in all events all bordereaus must be reported to the Insurer no later than the end of the **Policy Period**. The bordereau shall include copies of pertinent background documentation descriptive of any such **Claim** to the extent and as if such **Claim** were being reported individually and not on the bordereau. Any such bordereau may also contain notice of circumstances that may give rise to a **Claim** pursuant to subsection 2. and 3. below.

   Provided however, in all events, all **Claims** under all **Coverage Parts**, shall be noticed no later than (i) ninety (90) days after expiration of the **Policy Period**, or (ii) the expiration of the **Extended Reporting Period**, if exercised; Notwithstanding the foregoing, a failure to provide notice as soon as practical shall not preclude coverage under the policy unless the Insurer has been prejudiced by such failure.

2. If during the **Policy Period** or the **Extended Reporting Period**, if exercised, the **Insureds** become aware of circumstances that could give rise to a **Claim** against the **Insureds** and give written notice of such circumstances to the Insurer during the **Policy Period** or the **Extended Reporting Period**, if exercised, then any **Claims** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period**. No coverage is afforded under any **Liability Coverage Part** for fees, expenses or other loss incurred in connection with such potential **Claim** prior to the time such notice results in a **Claim**.

3. The **Insureds** shall include within any notice of **Claim**, or circumstance, a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insureds** first became aware of the **Claim** or circumstances.

## REPRESENTATIONS AND SEVERABILITY

Section IX.A and IX.B are replaced with the following:

A. REPRESENTATIONS

The **Insureds** agree that the Insurer has relied upon the accuracy and completeness of the representations, statements and information in the **Application**, which is deemed incorporated into and is a part of this Policy. The **Application** shall be construed as a separate **Application** for each **Insured**.

With respect to any statements, representations or information provided in the **Application**, the knowledge possessed by any one **Insured** shall not be imputed to any other **Insured**.

B. SEVERABILITY

The **Insureds** agree that in the event that the representations, statements or information in the **Application** are not accurate or complete, and materially affect either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, then no coverage shall be available to any **Insured** who knew as of the inception date of this Policy, the representations, statements or information were not accurate or complete in the **Application**, regardless as to whether such **Insured** knew the **Application** contained such inaccurate or incomplete information.

No knowledge or information possessed by any **Insured** shall be imputed to or deemed possessed by any other **Insured** for purposes of determining coverage.

Under no circumstances shall the Insurer be entitled to void or rescind this Policy for any reason.

## OTHER INSURANCE

Section XI shall be replaced with the following:

Solely with respect to any **Liability Coverage Part**, if any **Loss** resulting from any **Claim** is insured by any other valid and collectible policy issued to any **Insured**, then this policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

In addition to the above, regarding **Loss** attributable to the **Wrongful Acts** of an **Insured Person**, this Policy shall apply as primary insurance with respect to: (i) any private equity or venture capital liability, general partner liability, or other similar management or professional liability insurance policy, (ii) indemnification maintained by, for the benefit of, on behalf of or that may be available to, any **Insured Person**, or (iii) any personal liability insurance that may be available to an **Insured Person**.

## SUBROGATION

Section XII shall be replaced with the following:

Solely with respect to any **Liability Coverage Part**, in the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds**' rights of recovery, including without limitation any right of recovery from the **Company** for **Loss** incurred by **Insured Persons** which is indemnifiable by the **Company**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insureds**. In any subrogation claim against the **Company** to enforce the **Insured Persons**' right of indemnification, the shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification to the fullest extent permitted by law, and the Insurer's recovery from the **Company** for such **Loss** shall not exceed the Retention applicable to the **Company** for such **Loss**. The Insurer shall not exercise its right of subrogation against an **Insured Person** with respect to payments under any **Liability Coverage Part.**

The following shall be added to the **General Terms and Conditions Part**:

## ALTERNATIVE DISPUTE RESOLUTION

It is hereby understood and agreed that, only if requested by the **Company**, the Insurer shall submit any dispute, controversy or claim arising out of or relating to this policy or the breach, termination or invalidity thereof to final and binding arbitration pursuant to such rules and procedures as the parties may agree. If the parties cannot so agree, the arbitration shall be administered by the American Arbitration Association in accordance with its then prevailing commercial arbitration rules. The arbitration panel shall consist of one arbitrator selected by the **Company**, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses. The **Company** shall act on behalf of all **Insureds** in deciding to proceed with arbitration under this clause.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement No. 17**



# D&O AMENDATORY

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that for purposes of coverage under the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART**, the policy is amended as follows:

**INSURING CLAUSES**

**SECTION I** is replaced with the following:

A.  INSURED PERSON LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insured Persons** all **Non-Indemnified Loss** which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act.** No retention shall apply to **Non-Indemnifiable Loss** incurred by an **Insured Person**.

B.  COMPANY REIMBURSEMENT COVERAGE

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act.**

C.  COMPANY LIABLITY COVERAGE

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay on account of a **Claim** first made against the **Company** during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act**.

D.  DERIVATIVE DEMAND INVESTIGATION COSTS

The Insurer shall pay on behalf of the **Company** all **Investigative Costs** on account of a **Securityholder Derivative Demand** or **Books and Records Costs**  resulting from a **Books and Records Request**, first received by the **Company** during the **Policy Period** or the Extended Reporting Period, if exercised, for a **Wrongful Act**, provided (i) the Insurer's maximum liability for all **Investigative Costs** and **Books and Records Costs** covered under this Insuring Clause D shall be $250,000 which is part of and not in addition to the applicable Limits of Liability set forth in Items 2 and 6 of the Declarations, and (ii) no Retention shall apply to this Insuring Clause D.

**EXTENSIONS**

The following shall be added to **SECTION II**:

C.  ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES

Solely with respect to **Loss** covered under Section I. Coverage A, the Insurer shall provide an Additional Limit of Liability dedicated for **Insured Persons** as defined in Section III.B.1 of the **Coverage Part**, in the amount shown in Item 7. B, of the Declarations, if elected which is in addition to and not part of, the Aggregate Limit of Liability as shown in **Item 2** of the Declarations.  Such Additional Limit of Liability shall be excess of all other valid and collectible insurance specifically excess of this Policy, and such excess insurance must be completely exhausted by payment of **Loss** thereunder before the Insurer shall have any obligation to make

any payment on account of this Additional Limit of Liability dedicated for such **Insured Persons**. Such Additional Limit of Liability shall be the maximum aggregate additional limit of liability of the Insurer under this Policy for all **Loss** covered under Coverage A, regardless of the time of payment of such **Loss** by the **Insurer** or the number of **Claims**, and subject to all other terms and conditions of this Policy.

D. INQUIRY COST COVERAGE

    1. The Insurer shall pay on behalf of the **Insured Persons** all **Inquiry Costs** incurred solely by such **Insured Persons**, for which the **Insured Persons** are not indemnified by the **Company** as a result of an **Inquiry** first received by the **Insured Person** during the **Policy Period** or the **Extended Reporting Period**, if exercised, subject to the Limit of Liability set forth in Item 2.of the Declarations.

    2. The Insurer shall pay on behalf of the **Company** all **Inquiry Costs** incurred solely by an **Insured Person**, for which the **Insured Person** is indemnified by the **Company** as a result of an **Inquiry** first received by the **Insured Person** during the **Policy Period** or the Extended Reporting Period, if exercised, subject to the Limit of Liability set forth in Item 2. of the Declarations.

E. EXECUTIVE PROTECTION COVERAGE

    1. The Insurer shall pay on behalf of the **Insured Persons** all **Freedom Costs** incurred by an **Insured Person** during the **Policy Period**, in connection with a **Freedom Event**, subject to the Limit of Liability set forth in **Item 2** of the Declarations.

    2. The Insurer shall pay on behalf a **Protected Executive** all **PR Expenses** incurred by such **Protected Executive** as a result of a **Publication Event** first occurring during the **Policy Period**, subject to a sub-limit of liability for each **Publication Event** in the amount of $10,000, and an aggregate sublimit of liability for all **Publication Events** in the amount of $50,000, which shall be part of and not in addition to the Limit of Liability set forth in **Item 2** of the Declarations. No retention shall apply to **PR Expenses**.

    3. The Insurer shall pay on behalf of a **Protected Executive** all **Asset Protection Costs** incurred by such **Protected Executive**, subject to a sub-limit for each **Protected Executive** in the amount $10,000, subject to an aggregate sublimit of liability for all **Asset Protection Costs** in the amount of $100,000, which shall be part of and not in addition to the Limit of Liability set forth in **Item 2** of the Declarations. No retention shall apply to **Asset Protection Costs**.

**DEFINITIONS**

Definitions A, B, E and J are replaced with the following:

A. **Claim** means:

    1. a written demand against any **Insured** for monetary damages or non-monetary (including injunctive) relief, including a demand that the **Insured** toll or waive a statute of limitations or a demand or request for arbitration, mediation or other alternative dispute resolution, which shall be deemed first made upon the **Insured's** receipt of the demand;

    2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

    3. a criminal proceeding against any **Insured** commenced by a return of an indictment, information or similar document;

    4. an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

    5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

    6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

    7. an arbitration, mediation or other alternative resolution proceeding against any **Insured**;

    for a **Wrongful Act**, including any appeal therefrom,

8. solely with respect to Section I.D, a **Securityholder Derivative Demand**; and

9. solely with respect to II.D, an **Inquiry**, if the **Insured** provides notice of the **Inquiry** pursuant to Section VIII.A.1 of the GENERAL TERMS AND CONDITIONS as referenced below

B. **Insured Persons** means:

1. any one or more natural persons who were, now are or shall become: (i) a duly elected or appointed director or board observer (including shadow directors and *de facto* directors), **Manager**, officer, in-house general counsel, regent, governor, trustee (except bankruptcy or litigation trustee), advisory director, member of a duly constituted committee or board of the **Company**, or controller of the **Company**; (ii) a director of investor relations, director of human resources, risk manager or their functional equivalent of the **Company**; or (iii) with respect to any **Company** incorporated outside the United States, the functional equivalent of any of the foregoing positions;

2. any one or more natural persons not described in subparagraph 1 above, who were, are now, or shall become **Employees** of the **Company**; and

3. any one or more natural persons described in subparagraph 1 above while serving in an **Outside Position**.

provided that **Employees** described in subsection 2 above shall not be considered **Insured Persons** for purposes of Subsection II.B and Exclusions C or D in Section IV of this Coverage Part.

E. **Loss** means the amount the **Insureds** become legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, settlements, **Claim Expenses**, and any award of pre-judgment and post-judgment interest with respect to covered damages.

**Loss** includes: (i) **Plaintiff Fees**, (ii) **Compensation Clawback Costs**, (iii) **Corporate Manslaughter Costs**, (iv) solely with respect to Section I.D, **Investigative Costs** and **Books and Records Costs**, (vi) solely with respect to Section II.D, **Inquiry Costs**, and (vii) solely with respect to Section II.F, **Freedom Costs**, **PR Expenses** and **Asset Protection Costs**.

**Loss** also includes:

(i) civil money penalties assessed against an **Insured Person**: (i) pursuant to the Foreign Corrupt Practices Act Sections 15 U.S.C. §78dd-2(g)(2)(B)), or 15 U.S.C. §78ff- c)(2)(B); (ii) pursuant to Section 11(1)(a) of the United Kingdom Bribery Act of 2010, Chapter 23; (iii) pursuant to Section 308 of the Sarbanes Oxley Act, or (iv) solely under Coverage A, if insurable by law.

(ii) taxes imposed upon **Insured Persons** in their capacity as such solely as a result of bankruptcy, receivership, conservatorship, or liquidation, of a **Company**;

The insurability of such punitive, exemplary or multiple damages and civil penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Insured Entity**, the **Insured Persons**, the **Insurer**, this policy or such **Claim** is located; provided that **Loss** shall not include any taxes, fines or penalties assessed or imposed against an **Insured Person** as a result of such **Insured Person's** intentional or willful misconduct.

The **Insurer** shall not assert that **Loss** with respect to a **Claim** brought by one or more shareholders of the **Company**, is uninsurable due to an actual or alleged violation of Section 11, 12, or 15 of the Securities Act of 1933, as amended.

**Loss** (other than **Claim Expenses**) shall not include any of the following:

1. any amount for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2. any amount incurred by an **Insured** that represents or is substantially equivalent to an increase in the consideration paid  or proposed to be paid in connection with the purchase of any securities, assets or entity;

3. taxes, fines and penalties imposed by law, other than as referenced above;

4. any amount incurred to comply or provide, any non-monetary, injunctive, or other equitable relief or any agreement to provide such relief;

5. matters uninsurable under the law pursuant to which this policy is construed;

6. **Clean-up Costs**;

J. **Wrongful Act** means:

   1. with respect to the **Insured Persons**:

      A. any actual or alleged error, misstatement, misleading statement, neglect, breach of duty,    omission or act by the **Insured Persons**:

         (i)   in their capacity as such;

         (ii)  in their capacity as a **Controlling Person** or as a **Selling Shareholder;**

         (iii) in an **Outside Position**;

      B. any matter claimed against them solely by reason of their serving in such capacity or in an **Outside Position**; or

   2. solely with respect to Coverage C, any actual or alleged error, misstatement, misleading statement, neglect, breach of duty, omission or act by the **Company**, or any instance of the **Company** being named as a nominal defendant in a **Derivative Suit**.

The following definitions are added to **Section III**:

**Asset Protection Costs** means the reasonable fees, costs and expenses consented to by the Insurer, such consent not to be unreasonably withheld, and incurred by a **Protected Executive** to oppose a government order to seize or enjoin the sale or transfer of such **Protected Executive's** personal assets or real property and to obtain the discharge or revocation of any such order imposed upon such **Protected Executive** during the **Policy Period**.

**Books and Records Costs** means any reasonable costs, charges and fees incurred by the **Company** in response to a **Books and Records  Request**, such fees, costs and charges not to include regular or overtime wages, salaries or fees of the directors, officers or employees of the **Company**.

**Books and Records Request** means any written request submitted by or on behalf of a shareholder of the **Company** upon the Board of Directors of the **Company** to inspect the books and records of such **Company** pursuant to Section 220 of the Delaware General Corporation Law or other similar statute.

**Clean-Up Costs** mean any amount incurred to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

**Compensation Clawback Costs** means the reasonable fees, costs, and expenses (including the premium or origination fee for a loan or bond) incurred by an **Insured Person** to investigate or defend any **Claim** pursuant to, or to facilitate the return of amounts required to be paid by such **Insured Person** pursuant to, Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Act of 2010, or any rules, regulations or policies pursuant to such Sections; provided that **Compensation Clawback Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be paid by such **Insured Person** pursuant to such sections, rules, regulations or policies.

**Controlling Person** means an **Insured Person** incurring liability pursuant to Section 15 of the Securities Act of 1933, Section 20 of the Securities Exchange Act of 1934, or any similar federal, state or local (whether statutory or common law), rule or regulation.

**Corporate Manslaughter Costs** means the reasonable fees, costs and expenses consented to the by the Insurer, such consent not to be unreasonably withheld, and incurred by an **Insured Person**, in the investigation, adjustment, defense and/or appeal of a claim made against the **Company** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute.

**Derivative Suit** means any lawsuit by a securityholder of a **Company** brought derivatively on behalf of such **Company** against an **Insured Person** or the **Company,** including against the **Company** as a nominal defendant.

**Enforcement Body** means any federal, state, local or foreign law enforcement or governmental investigative authority (including but not limited to the U.S Department of Justice, the Securities and Exchange Commission and any attorney general) or enforcement unit of any securities or commodities exchange or other self-regulatory body.

**Freedom Costs** means the reasonable fees, costs, and expenses consented to by the Insurer, such consent not to be unreasonably withheld, and incurred by an **Insured Person**, to seek their lawful release in connection with a **Freedom Event. Freedom Costs** shall include the premium for a bond or similar instrument (provided the Insurer shall have no obligation to apply for or furnish such appeal) to guarantee any contingent obligation ordered by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums arise out of an actual or alleged **Wrongful Act** of the **Insured Person**.

**Freedom Event** means the arrest or confinement of an **Insured Person** in their capacity, by or on behalf of a governmental law enforcement authority to a specific residence or secure custodial premises, first taking place during the **Policy Period**.

**Inquiry** means:

1. a civil, criminal, administrative, or regulatory investigation or inquiry of an **Insured Person** by an **Enforcement Unit**, commenced by the **Insured Person's** receipt of a subpoena, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the U.S. Attorney's Manual), formal order of investigation, civil investigative demand, notice of charges, order to show cause, search warrant, S.E.C. Form 1661 or 1662, or other similar document, or the functional or foreign equivalent thereof;

2. a written request or demand of an **Insured Person** by an **Enforcement Unit** for an interview, meeting, sworn testimony or documents in connection with the business of the **Company**, or in connection with such **Insured Person** in his or her capacity as such;

3. a written request or demand of an **Insured Person** by a **Company** (including its board of directors or any committee of its board of directors) for an interview, meeting, sworn testimony or documents in connection with: (i) a **Securityholder Derivative Demand**, or (ii) an investigation of a **Company** by an **Enforcement Unit;**

**Inquiry** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, industry sweep, including any request for mandatory information from an **Enforcement Unit**, conducted in a **Company's** and/or **Enforcement Unit's** normal review or compliance process or any subpoena received by an **Insured** as a non-party witness.

**Inquiry Costs** means the reasonable costs, charges and fees (including but not limited to attorney's fees) and expenses (other than compensation of the directors, officers and employees of the **Company**) consented to by the Insurer, such consent not to be unreasonably withheld, and incurred by an **Insured Person** solely in connection with his or her preparation for and response to an **Inquiry**; provided **Inquiry Costs** shall not include the costs of complying with any formal or informal discovery or other requests seeking documents, records or electronic information in the possession or control of a **Company**.

**Plaintiff Fees** means the reasonable plaintiff attorney fees and/or costs incurred by an **Insured** that are awarded by the court in a final, non-appealable judgment or are included in the terms of any court approved settlement.

**PR Expenses** means the reasonable fees, costs, and other expenses of a public relations consultant engaged by the **Protected Executive** and approved by the Insurer, such approval not to be unreasonably withheld, to mitigate reputational harm to such **Protected Executive** as a result of a **Publication Event**.

**Protected Executive** means any **Insured Person** as defined in Subsection III.B.1 of the Policy.

**Publication Event** means any negative statement about a **Protected Executive** made during the **Policy Period** in any publication by an individual authorized to speak on behalf of any **Enforcement Unit**.

**Selling Shareholder** means an **Insured Person** incurring liability pursuant to the Securities Act of 1933, Section 12(2), or any similar federal, state or local (whether statutory or common law), rule or regulation.

## EXCLUSIONS

Section IV. is amended as follows:

The preamble to Section IV is replaced with the following:

The Insurer shall not be liable under this **Coverage Part** to pay **Loss** in connection with that portion of any **Claim** made against an **Insured**:

Exclusions A, C, D, F, G, I,J, and K are replaced with the following:

A. based upon, arising out of, or attributable to any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given and accepted under any prior directors and officers, management liability or comparable insurance policy or coverage part;

C.  brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

1.  a **Claim** that is a derivative action brought or maintained on behalf of the **Company** by one or more persons who are not **Insured Persons** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company** or any **Insured Person** or if the only such solicitation, assistance or participation by the **Company** and **Insured Persons** is (i) solely pursuant to, or in compliance with, a subpoena or similar legal process, or (ii) protected pursuant to any whistleblower statute;

2.  a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part;

3.  a **Claim** brought by an **Insured Person** who has not served as an **Insured Person** for at least two (2) year prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

4.  a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, rehabilitator, or similar official or creditors committee for such **Company**, or any assignee of such trustee, examiner, receiver, rehabilitator, or similar official or creditors committee;

5.  a **Claim** by or on behalf of the **Company** brought and maintained in any non-common law jurisdiction outside the United States; or

6.  **Compensation Clawback Costs**.

D.  for a **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor or trustee of such entity, provided this exclusion shall not apply to:

1.  a **Claim** that is a derivative action brought or maintained on behalf of such **Outside Entity** by one or more persons who are not directors, officers, managers or trustees of the **Outside Entity** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** or if the only such solicitation, assistance or participation by the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** is (i) solely pursuant to or in compliance with a subpoena or similar legal process, or (ii) protected pursuant to any whistleblower statute;

2.  a **Claim** for an employment-related **Wrongful Act** brought or maintained by a director, officer, manager, governor or trustee of such **Outside Entity**;

3.  a **Claim** brought by an **Insured Person** who has not served as an **Insured Person** for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Outside Entity** or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

4.  a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, rehabilitator or similar official or creditors committee for such **Outside Entity**, or any assignee of such trustee, examiner, receiver, rehabilitator, similar official or creditors committee;

5.  a **Claim** by or on behalf of the **Outside Entity** brought and maintained in any non-common law jurisdiction outside the United States; or

6.  **Compensation Clawback Costs**.

F.  for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to: (i) any **Claim Expenses** incurred as a result of a **Claim** brought pursuant to the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007, or any similar criminal statute, (ii) a **Claim** under Coverage A, or (iii) a **Claim** brought by one or more shareholders of the **Company**.

G.  based upon, arising out of or attributable to:

1.  the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

2. any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

provided this exclusion shall not apply to **Non-Indemnifiable Loss**, or a **Claim** by one or more shareholders of the **Company** in their capacity as such.

I. based upon, attributable to, or arising out of any deliberately criminal or fraudulent act or omission or any intentional violation of any statute, regulation, rule or law committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in the underlying proceeding establishes such a deliberately fraudulent act or omission or intentional violation; provided, with respect to any acts or omissions which are treated as criminal violations in a foreign jurisdiction that are not treated as criminal violations in the United States of America, the imposition of a criminal fine or other criminal sanction in such foreign jurisdiction will not, by itself, be conclusive proof that deliberately criminal or fraudulent act occurred;

J. based upon, attributable to, or arising out of such **Insured** gaining any personal profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in the underlying proceeding establishes such **Insured** gained any such profit, remuneration or financial advantage; provided that this Subsection IV.J shall not apply to (i) **Compensation Clawback Costs** or (ii) any **Claim** brought by one or more shareholders of the **Company** alleging violation of Section 11, 12, or 15 of the Securities Act of 1933, as amended;

K. based upon, arising out of or attributable to (i) the actual purchase or sale, or offer or solicitation of an offer to purchase or sell, any public equity securities by the **Company** or an **Outside Entity**, or (ii) the actual or alleged violation of any federal, state, local or foreign law relating to public equity securities; provided this exclusion shall not apply to any:

1. **Claim** based upon, arising out of or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities not required to be registered under the Securities Act of 1933, as amended;

2. **Claim** based upon, arising out of or attributable to the failure of the **Company** or an **Outside Entity** to undertake or complete a public offering of securities, including any "roadshow" disclosures or other activities in connection with such failure.

The last paragraph of Section IV is replaced with the following:

For the purpose of determining the applicability of any Exclusion set forth in this Section IV, the **Wrongful Act** or knowledge of any **Insured** shall not be imputed to any other **Insured**.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# EPL AMENDATORY



| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

## PRIVATE COMPANY LIABILITY POLICY

In consideration of the premium paid, it is hereby understood and agreed that the **EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION COVERAGE PART** is amended as follows:

**SECTION I. INSURING AGREEMENTS** is replaced with the following:

### SECTION I – INSURING AGREEMENTS

A.   EMPLOYMENT PRACTICES LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period**, if exercised, and reported to the Insurer in accordance with Section VIII. of the General Terms and Conditions, for an **Employment Practices Wrongful Act**.

B.   THIRD PARTY DISCRIMINATION LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Third Party Discrimination Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period**, if exercised, and reported to the Insurer in accordance with Section VIII. of the General Terms and Conditions, for a **Third Party Discrimination Wrongful Act**.

**SECTION II – DEFINITIONS** is amended as follows:

The definitions of **Employment Practices Claim, Loss** and **Wrongful Act** in Sections II.B, II.G and II.K, respectively, are replaced with the following:

B.   **Employment Practices Claim** means:

1.   a written demand against any **Insured** for monetary damages or non-monetary (including injunctive) relief, including a written demand for reinstatement, reemployment or reengagement of an **Employee**, a written demand that the **Insured** toll or waive a statute of limitations, or a written demand or request for arbitration, mediation or other alternative dispute resolution, which shall be deemed first made upon the **Insured's** receipt of the demand;

2.   a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3.   an administrative or regulatory proceeding against any **Insured**, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, commenced by the filing of a notice of charges or similar document;

4.   a civil, administrative or regulatory investigation of any **Insured** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

5.   an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

6. an arbitration or mediation proceeding against any **Insured**;

brought by or on behalf of any past, present, future or prospective **Employee** in their capacity as such, for an **Employment Practices Wrongful Act**, including any appeal therefrom; provided **Employment Practices Claim** does not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

G. **Loss** means **Claim Expenses**, damages (including front and back pay), settlements, judgments (including awards of claimant attorney's fees), pre-judgment and post-judgment interest, punitive, exemplary or multiple damages, or liquidated damages awarded pursuant to the Age Discrimination in Employment Act or Equal Pay Act.

The insurability of such punitive, exemplary, multiple or liquidated damages shall be determined under the laws of any applicable jurisdiction most favorable to the Insureds.

**Loss**, other than **Claim Expenses**, shall not include:

1. taxes, fines or penalties imposed by law;

2. any amount incurred by the **Insured** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief, including without limitation, any costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans with Disabilities Act or any amendments thereto or any similar foreign, federal, state or local statute, regulation, rule or law;

3. employment-related benefits including without limitation retirement benefits, vacation or sick days, medical or insurance benefits, stock benefits (including stock options or similar rights), deferred compensation or any other type of compensation other than salary, wages or bonus compensation (including any compensation earned by or due to, a claimant in the course of employment but not paid (other than back pay or front pay);

4. future compensation of a claimant who was, is or shall be hired, promoted or reinstated to employment;

5. employment termination severance payments other than any payments negotiated with and consented to by the Insurer as part of a settlement;

6. amount for which the Insureds are not liable or for which the claimants are without legal recourse to the Insureds;

7. **Clean-Up Costs**; or

8. matters that are uninsurable pursuant to applicable law;

K. **Wrongful Act** means:

1. an **Employment Practices Wrongful Act**; or

2. a **Third Party Discrimination Wrongful Act**.

**SECTION III – EXCLUSIONS** is amended as follows:

The preamble to Section III is replaced with the following:

The Insurer shall not be liable under this **Coverage Part** to pay **Loss** in connection with that portion of any **Claim** made against an **Insured**:

Exclusions A and D are replaced with the following:

A. based upon, arising out of, or attributable to any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given and accepted under any prior employment practices liability, third-party discrimination, or comparable insurance policy or coverage part;

D. for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any **Loss** for employment-related emotional distress, mental anguish or humiliation;

Exclusions E, F, G, H, and I are deleted.

The following exclusion is added to the **Coverage Part**:

based upon, arising out of, or attributable to any liability under any contract or agreement, provided this exclusion shall not apply to: (1) the extent that liability would have been incurred in the absence of such contract or agreement; or (2) **Claim Expenses.**

The last paragraph of Section III is replaced with the following:

For the purpose of determining the applicability of any Exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured** shall not be imputed to any other **Insured**.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

# FIDUCIARY AMENDATORY




| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

## PRIVATE COMPANY LIABILITY POLICY

In consideration of the premium paid, it is hereby understood and agreed that the **FIDUCIARY LIABILITY COVERAGE PART** is amended as follows:

**SECTION I. INSURING AGREEMENTS**, A is replaced with the following:

A.   FIDUCIARY LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act**.

**SECTION II – DEFINITIONS** is amended as follows:

The definition of **Administration** in Section II.A is replaced with the following:

A.   **Administration** means (i) advising, counseling or failing to provide timely notice to employees, beneficiaries or **Plan** participants with respect to any **Plan**, (ii) providing interpretations with respect to any **Plan**, (iii) handling records in connection with any **Plan**, and (iv) enrolling, terminating or canceling employees, beneficiaries or participants under any **Plan**.

The definition of **Claim** in Section II.B.1. is replaced with the following:

1.   a written demand against any **Insured** for monetary damages or non-monetary (including injunctive) relief, including a written demand that the **Insured** toll or waive a statute of limitations or a written demand or request for arbitration, mediation or other alternative dispute resolution, which shall be deemed first made upon the **Insured's** receipt of the demand;

The definition of **Insured Persons** in Section II.C is replaced with the following:

C.   **Insured Persons** means any one or more natural persons who were, now are or shall become duly elected or appointed directors, trustees, governors, **Managers**, officers, **Employees** advisory directors or members of a duly constituted committee or board, in their capacity as such (including employed lawyers solely in their capacity as an **Employee**), of any **Company** or **Plan** or their functional equivalent.

The definition of **Plan** in Section II.F is amended as follows:

Section II.F.3 in replaced with the following:

3.   any employee benefit plan or program otherwise described in paragraphs 1 or 2 above while such plan or program is being actively developed, formed or proposed by any **Company** prior to the formal creation of such plan or program;

The following shall be added to Section II.F:

5.   any Voluntary Employee's Beneficiary Association as defined in Section 501(c)(9) of the Internal Revenue Code of 1986, as amended, for which the purpose is to provide life, sick, accident, or other benefits for

voluntary members who are employees of the Company (including their dependents or designated beneficiaries);

6. Foster Farms Group Pension Plan, and Employee P/S Retirement Plan & Trust of Foster Farms Group ("Multiple-Employer Plan"), as defined in ERISA, solely for that portion which was, is now, or hereafter sponsored by the **Company** for the benefit of the employees of the **Company**.

The definition of **Wrongful Act** in Section II.J. is replaced with the following:

1. any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by the **Insureds** in the discharge of their duties as, or solely by reason of their status as, fiduciaries of any **Plan**, or in a settlor capacity with respect to any **Plan**; or

2. any negligent act, error or omission actually or allegedly committed or attempted by the Insureds in the Administration of a Plan, including, but not limited to the actual or alleged failure to properly and timely provide COBRA notices.

The following definition is added to Section II.

**Managed Care Services** means the management or administration, by any entity that is not an **Insured**, of any **Plan** that is a health care, pharmaceutical, vision or dental plan, utilizing cost control mechanisms.

## SECTION III – EXCLUSIONS is amended as follows:

The preamble to Section III is replaced with the following:

The Insurer shall not be liable under this **Coverage Part** to pay **Loss** in connection with that portion of any **Claim** made against an **Insured**:

Exclusions A, C, E and G are replaced with the following:

A. based upon, arising out of, or attributable to any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given and accepted under any prior fiduciary liability or comparable insurance policy or coverage part;

C. for bodily injury, sickness, emotional distress, mental anguish, humiliation, disease or death of any person or damage to or destruction of any tangible property including loss of use of such damaged or destroyed property; provided this exclusion shall not apply to a **Claim** for actual or alleged negligent or improper selection of a **Managed Care Services** provider or improper delay or denial of benefits under a **Plan** by a **Managed Care Services** provider.

E. based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in the underlying proceeding establishes such a deliberately fraudulent act or omission or willful violation;

G. for any failure of any **Insured** to comply with any government-mandated insurance for worker's compensation, unemployment, social security or disability benefits law, or any law that governs wage, hour and payroll policies and practices (including the Fair Labor Standards Act), or any amendments to or rules or regulations promulgated under any such laws, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; provided this exclusion shall not apply to any actual or alleged obligation of any **Insured** pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 or Health Insurance Portability and Accountability Act of 1996, as amended;

Exclusion H. is deleted.

Exclusion I. is replaced with the following:

I. for **Loss** which constitutes:

1. (i) benefits due or to become due under any **Plan**, or (ii) benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, or (iii) that portion of any settlement or judgment which constitutes such benefits; provided this Exclusion (I)(1) shall not apply to the extent that recovery for such

benefits is based upon a covered **Wrongful Act** by an **Insured Person** and such benefits are payable as a personal obligation of such **Insured Person**; or

2. contributions owed by the **Company** to any **Plan** for which any of the **Insureds** failed to collect from the **Company** unless the failure is because of the negligence of an **Insured**;

provided this exclusion shall not apply to (i) **Claim Expenses**.

The last paragraph of Section III is replaced with the following:

For the purpose of determining the applicability of any Exclusion set forth in this Section III, the **Wrongful Act** or knowledge of any **Insured** shall not be imputed to any other **Insured**.

**SECTION IV – COVERAGE ENHANCEMENTS** shall be added to include the following:

A. Disproven Allegation Protection

In the event that an allegation which triggers potential coverage under this policy is disproven, so that a **Claim** is outside the scope of coverage under this policy, the **Insurer** shall not seek recovery of amounts that it has previously paid. Situations that would trigger this protection include, but are not limited to when it is proven that:

(1) an **Executive Officer** or employee of the **Company** who was alleged to be a **Plan** fiduciary was not in fact a **Plan** fiduciary;
(2) an **Insured's** alleged breach of fiduciary duty was in fact a settlor act;
(3) an alleged **Plan** was not a plan or was not a covered **Plan**; or
(4) a **Company** alleged to be the sponsor of a **Plan** was not in fact the sponsor of such plan.

B. Independent Fiduciary Fees

**Loss** shall include reasonable and necessary fees and expenses of an independent fiduciary if such fiduciary is retained to review a proposed settlement of a covered **Claim**. **Loss** shall also include reasonable and necessary fees and expenses of any law firm hired by such independent fiduciary to facilitate a review of such proposed settlement.

C. LMRA Coverage

If, and during the time that, coverage is provided under this policy, then this policy shall also pay the **Loss** of an **Insured** arising from an allegation that such **Insured** violated Section 301 of the Labor Management Relations Act ("LMRA") relating to alleged violations of collectively bargained contracts in connection with a **Plan**.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



# PRODUCT EXCLUSION

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

Solely for purposes of coverage provided under the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** of the policy, it is hereby understood and agreed that:

SECTION IV - Exclusions L.7. is replaced with the following:

based upon, arising out of, or attributable to, in whole or in part,  any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, advertised (including but not limited to falsely advertised, or misrepresented in advertising) or developed by or on behalf of any **Company** including, but not limited to, any unfair or deceptive trade practices or violation of the Federal Trade Commission Act or any similar law; provided however this exclusion shall not apply to any **Securities Claim**, or **Loss** in connection with any actual or alleged unfair or deceptive trade practices related to business competition, tortious interference in another's business or contractual relationships, anti-trust, monopoly, price fixing, price discrimination, or predatory pricing otherwise covered under Endorsement No. 21 to the Policy.

Solely with respect to Exclusion L.7., **Securities Claim** means a **Claim** made against any **Insured**:

1.  Alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:
    a.  Brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of a Company; or
    b.  Brought by a security holder of a Company

2.  Brought derivatively on the behalf of a Company

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



# ANTI-TRUST COVERAGE ENDORSEMENT

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that:

The **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** is amended as follows:

I.   The following is added to Section I - Insuring Clauses:

    E. ANTI TRUST COVERAGE

       The Insurer shall pay on behalf of the **Company**, all **Loss** for which the **Company** becomes legally obligated to pay on account of any **Anti-Trust Claim** first made against the **Company** during the **Policy Period** or the **Extended Reporting Period,** if exercised, for a **Wrongful Act** taking place before or during the **Policy Period,** subject to a maximum limit of liability of $5,000,000, which is part of and not in addition to the applicable Limits of Liability set forth in Items 2 and 6 of the Declarations.

II.   The insurer's liability for all **Loss** covered under Insuring Clause E shall be excess of a retention in the amount of $1,000,000.

III.   Section III – DEFINITONS is amended as follows:

    A. The following is added to the definition of **Claim** in Subsection III.A:

       Solely with respect to Insuring Clause E, **Claim** also includes an **Anti-Trust Claim**.

    B. The Following definition is added to the policy:

       **Anti-Trust Claim** means a **Claim** for a violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, as amended, or any other similar federal, state, local or foreign law involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or a violation of the Federal Trade Commission Act or any unfair or deceptive trade practices related to business competition, tortious interference in another's business or contractual relationships, anti-trust, monopoly, price fixing, price discrimination, or predatory pricing.

IV.   Any **Loss** of the **Parent Company** that is subject to coverage pursuant to the terms and conditions of Section I above shall not be covered under any other provision of the policy.

V.   Subsection IV.L 5 -- Exclusions is deleted.

VI.   The coverage provided by this endorsement shall not impact the availability of coverage for any **Anti-Trust Claim** otherwise covered under Insuring Clauses A or B of the Coverage Part.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**



# MASS CLASS D&O RETENTION

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

In consideration of the premium paid, it is hereby understood and agreed that:

ITEM 6. COVERAGE SCHEDULE A. Management and Company Liability Retention, is amended to include the following:

$<u>1,000,000</u> Each **Mass Class Claim**.

Section II – Definitions of the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** is amended to include:

**Mass Class Claim** means any **Claim** that is brought by or on behalf of: (i) an actual or alleged class (whether or not certified as such); (ii) any group of three of more complainants, plaintiffs or potentially aggrieved parties, or (iii) any **Enforcement Body** or any similar foreign, state, county or local body on behalf of any group of three of more complainants, plaintiffs or potentially aggrieved parties.

**Enforcement Body** means any federal, state, local or foreign law enforcement or governmental investigative authority (including but not limited to the U.S Department of Justice, the Securities and Exchange Commission and any attorney general) or enforcement unit of any securities or commodities exchange or other self-regulatory body.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**




# BORDEREAU REPORTING ENDORSEMENT
## (Semi-Annual)

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

Solely for the purposes of coverage provided under the **EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION COVERAGE PART,** it is hereby understood and agreed that:

**SECTION VIII.A.1** of the General Terms and Conditions is replaced with the following:

As a condition precedent to their rights under any Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after an **Executive Officer**, General Counsel, or Risk Manager or functional equivalent, if any, first learns of such **Claim**, or solely with respect to the Employment Practices Liability Coverage Part, upon the earliest occurrence of the following:

(i)  The **Claim** is brought as a class action (whether or not certified), or by more than one claimant, or a motion is made seeking class certification;

(ii)  The **Claim** alleges sexual harassment or discrimination by or against a duly elected or appointed corporate director or officer of the **Company**; or

(iii)  The total **Loss** incurred in connection with the **Claim** is reasonably estimated by the Human Resources Department or Office of the General Counsel to exceed 50% of the applicable retention amount.

The **Insureds** shall be entitled to provide written notice of any **Claims**, other than those listed in (i) through (iii) above, on a semi-annual basis, in the form of a bordereau report, provided that in all events, all bordereau reports must be submitted to the Insurer no later than the end of the **Policy Period**.

For purposes of this paragraph, semi-annual reporting means each period of 6 consecutive calendar months commencing on:

May 7, 2019

November 7, 2019

The bordereau report shall contain information including, but not limited to, a description of the **Claim**, the nature of the alleged **Wrongful Act**, the nature of the alleged damage, the names of the claimants and the manner in which the **Insured** first became aware of the **Claim**. The **Insured** shall forward every demand, notice, summons, complaint, process or claim materials received by any **Insured** (or their representative) in connection with any **Claim** for which notice is submitted in a bordereau report, if requested by the Insurer.

The bordereau report may also contain notice of circumstances that may give rise to a **Claim** pursuant to Subsection VIII.A.3 of the General Terms and Conditions.

Provided however, in all events, all **Claims** shall be noticed no later than (i) ninety (90) days after expiration of the **Policy Period**, or (ii) the expiration of the **Extended Reporting Period**, if exercised.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**.



## SIDE-A MATCHING ENDORSEMENT

| Named Insured | Policy Number | Policy Period | Writing Company | Endorsement Effective Date |
|---|---|---|---|---|
| Foster Poultry Farms | PC8ML00004-191 | 05/07/2019-05/07/2020 | Everest National Insurance Company | 05/07/2019 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following policy:

**PRIVATE COMPANY LIABILITY POLICY**

Solely for purposes of coverage provided under the **MANAGEMENT AND COMPANY LIABILITY COVERAGE PART** of the policy, it is hereby understood and agreed that:

For any **Claim** against an **Insured Person** subject to coverage under Section I.A of the **Coverage Part** ("**Side-A Coverage**"), such coverage under this policy, shall be extended to include coverage provided by the **Side-A Policy** referenced below that is not already encompassed in the **Side-A Coverage**.

Provided that any extension of coverage provided by this Endorsement shall not: (i) serve to increase any Limit of Liability under this policy, (ii) apply to any term, condition or exclusion in any other endorsement to this policy, (iii) apply to any reinstatement provision(s) of the **Side-A Policy**, or (iv) modify any other term, condition or exclusion applicable to any coverage afforded under this policy, other than coverage provided under the **Side-A Coverage**.

**Side-A Policy** means Policy No.PC8EX00046-191, issued by Everest National Insurance Company to for the policy period of 05/07/2019-05/07/2020.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Everest National Insurance Company
Everest Indemnity Insurance Company
Everest Security Insurance Company
Everest Reinsurance Company



## Claim Reporting Guidelines

The Everest Claim Department is dedicated to providing prompt, thorough and professional claims service. Timely submission of Loss Notices complies with the terms and conditions of your policy and assists us in providing quality service to our policyholders.

**The preferred method for notifying Everest of a claim would be via e-mail**. However, Loss Notices may be submitted via mail, facsimile or e-mail. If immediate attention is needed, e-mail notification is strongly recommended.

**By E-mail:**
    **Claims E-mail:** **everestnationalnjclaim@everestre.com**

**By Mail:**
    **Casualty Claims Department**
    **Everest National Insurance Company**
    **P.O. Box 830**
    **477 Martinsville Road**
    **Liberty Corner, NJ 07938**

**By Facsimile:**
    **Fax Claims:** **(866) 283-4856**

**Consult Your Policy for Loss Reporting Requirements**

Your policy identifies the information to be submitted with a First Notice of Loss. Additionally, the following information/documentation will always be helpful and often necessary in assisting us with our evaluation:

- Citing Everest's policy, or claim number, in all correspondence
- Providing a copy of any lawsuit, demand for arbitration or mediation, a governmental agency notice, claim letter or any similar notice
- Sending a copy of any internal reports related to the claim
- Copies of status reports prepared by your defense counsel and/or your claim handler

Everest will acknowledge each First Notice of Loss, initiate contact with you, and will request any additional information that may be needed. Everest will identify the claim professional responsible for handling your reported loss and forward their specific contact information to you. If you become aware of any subsequent information that may impact your claim, you should immediately send it to your assigned claim professional.

If you have questions or would like to discuss a specific loss with one of our claim professionals, please feel free to contact us. Thank you.

*This guideline is merely for illustrative purposes and does not purport to address every situation or circumstance that may arise. Notwithstanding any statements made herein, nothing contained in this guideline is intended to replace, modify or waive any terms, conditions or warranties contained in the policy. Everest expressly reserves and does not waive any of its rights and protections afforded under the policy.*