# EXHIBIT E



Everest Insurance®
Westgate Corporate Center
477 Martinsville Road, P.O. Box 830
Liberty Corner, NJ 07938-0830

Matthew Strauss, Esq.
Claims Manager
Direct Dial: (908) 604-7184
E-mail: Matthew.Strauss@everestnational.com

June 3, 2020

**Via Email: MGamboa@lockton.com**

Mark Gamboa
Vice President, Insurance & Claims Counsel
Lockton Insurance Brokers, LLC
777 S. Figueroa St., 52nd Floor
Los Angeles, CA 90017

|  |  |
|---|---|
| Named Insured: | Foster Poultry Farms |
| Everest Policy: | Private Company Liability Policy |
| Everest Policy No.: | PC8ML00004-191 |
| Matter: | Olean Wholesale Grocery Cooperative |
| Everest File No.: | 5-6866 |

Dear Mark,

We have reviewed your email of April 23, 2020 in detail. For the reasons discussed below, Everest maintains its position that Endorsement 15 precludes coverage for the *Olean* (direct purchaser) claim and for the more recent *Sandee's Catering* (indirect purchaser) claim. Other than the nature of the claimant classes, the *Olean* and *Sandee's* claims are identical. For ease of reference, both *Olean* and *Sandee's* will be referred to as the Turkey matter(s).

Before looking at the Turkey matter in relation to the Broiler Chicken matter, however, we considered the language of Endorsement 15. We cite it here in its entirety:

> EXCLUSIONS APPLICABLE TO ALL COVERAGE PARTS:
>
> The Insurer shall not be obligated to defend or be liable to pay **Loss** on account of any: (i) **Claim** based upon, arising out of, or attributable to any **Events**; (ii) investigation, defense, prosecution, adjudication, settlement, disposition or resolution of any **Event(s)**; or (iii) any **Claim** alleging the same or substantially the same **Wrongful Acts**, **Interrelated Wrongful Acts**, facts, circumstances or situations underlying or alleged in any **Events**:

**Events**
AIG Claim #501-519830-001 (Claimant: BROILER CHICKEN ANTITRUST)
AIG Claim #501-478035-001 (Claimant: ALEXANDERWONG)
Zurich Claim #9410555146 (Claimant: Fair Labor Standards Act)

It is further understood and agreed that the Insurer shall not be obligated to defend or be liable for **Loss** on account of any **Claim** alleging, based upon, arising out of, or attributable to or in any way related directly or indirectly, in whole or in part, to an **Interrelated Wrongful Act** (as that term is defined below) regardless of whether such **Claim** involved the same or different claimants, the same or different **Insureds**, the same or different legal causes of action or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement, the term **Interrelated Wrongful Act** means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, is similar or related to, or a repetition of, any **Wrongful Act** alleged in any **Event(s)**.

Endorsement 15, as written, is more expansive than a standard interrelatedness clause. This exclusion applies regardless of whether there is an overlap of parties, causes of action, venues or even insureds. The nexus between subsequent claims and the specifically excluded matter can be direct, indirect or even only partially related. These specific terms make any discussion of distinctions like a partial difference in parties or the specific antitrust claims alleged irrelevant. All that must be shown is a similar wrongful act, as defined in Endorsement 15.

With these limitations in mind, the distinctions you identified regarding the timing of the matters, the lack of complete identity of defendants and the precise antitrust theories alleged simply do not matter for purposes of this analysis. That said, the Turkey and Broiler Chicken matters are remarkably similar. As you readily acknowledge, the Turkey matter "borrows heavily" from the Broiler Chicken matter. As to Foster Farms, both matters allege Foster Farms conspired with other poultry producers to utilize the same data (sales, production, profits, costs, prices, inventory, yields and slaughter information), from the same source (Agri Stats) for the same purpose (curtailment of production to artificially raise prices). We note your reference to the Georgia Dock, an alternate theory presented in the Broiler Chicken matter and not in the Turkey matter, but even if that was sufficient to overcome the broad terms of Endorsement 15, the argument does not apply to Foster Farms. Foster Farms is not involved in the Georgia Dock and no claim is made against it based on the Georgia Dock (the index manipulation allegations in the Broiler Chicken matter are limited to the ten "Georgia Dock Defendants;" Foster Farms is not among them). The claims against Foster Farms in both the Broiler Chicken and Turkey matters are based entirely on the alleged improper use of Agri Stats data, not the manipulation of an index. Both matters allege the same conduct. The only difference is the type of poultry.

In addition, we note the claimants in the Turkey matters both assert in the relevant civil cover sheets that these matters are "related" to the Broiler Chicken litigation. In the case of the *Olean* claim, the plaintiff has filed a motion to transfer the case to Judge Durkin, who is presiding over

the Broiler Chicken litigation on the grounds that the matters are related and the transfer will result in judicial economy. Foster Farms has opposed the transfer, but not on the grounds that the claims are unrelated; this point it concedes. Its opposition is based on the absence of three of four *additional* requirements for transfer specified in Local Rule 40.4; specifically that transfer will not save judicial resources, the Broiler Chicken matter is further along and the cases cannot be resolved in a single proceeding. Foster Farms does not contend the matters are unrelated. We also note that the Turkey matter alleges Foster Farms stopped using Agri Stats to increase turkey prices in specific response to the Broiler Chicken lawsuits and investigations because the alleged unlawful conduct was the same.

As to the Insured's reasonable expectations, we note Endorsement 15 is clear and unambiguous. The identification of the Broiler Chicken matter is specific, as is the language eliminating the basis for the distinctions you raise in your email. As to the suggestion that our interpretation means the anti-trust coverage provided by the Everest policy is illusory, we do not understand how you reached this conclusion. The coverage is there, and any anti-trust matter brought that does not allege the use of Agri Stats to curtail production and thereby raise prices, would not be affected by the terms of Endorsement 15. As far as the Turkey matter is concerned, Foster Farms is not without coverage; that coverage just properly lies with AIG and any other carriers in the Foster Farms' tower for that policy period.

Finally, we respectfully remain unpersuaded by your effort to distinguish the case law we provided in support of our conclusion. The reason for the analysis in each of those cases is irrelevant. It is the interrelatedness analysis itself that matters. In California, both causal and logical relationships will suffice to show interrelatedness of claims. Here, there is certainly a logical relationship; even Foster Farms does not dispute that position. The common allegations regarding the use of Agri Stats as the means of controlling production so as to raise prices, though, also support a causal connection. *Liberty Insurance Underwriters, Inc. v. Davies Lemmis Raphaely Law Corporation* is a good example of how the California rule would be interpreted. In that case, the court concluded that seven different lawsuits, involving 23 different transactions were part of a "similar scheme" and, therefore interrelated. The focus was on whether there was a common nexus of conduct alleged in the claims, not the individual details of each. Here, the use of Agri Stats and its data to facilitate price manipulation through a decrease in production is the common nexus, or *modus operandi,* and establishes the interrelatedness of the claims.

Based on the foregoing, Everest stands by its coverage position. Please do not hesitate to contact me if you have further questions or additional issues you would like us to consider.

Very truly yours,

Matthew W. Strauss

cc:     Besty Carpenter, BCarpenter@lockton.com